**United States District Court**
**District of Massachusetts**

```
_____  )
                             )
In re:                       )
                             )    MDL No.
CELEXA AND LEXAPRO MARKETING AND )    09-02067-NMG
SALES PRACTICES LITIGATION   )
_____  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs Scott A. Wilcox ("Wilcox"), Angela Jaeckel, et al. ("Jaeckel"), Martha Palumbo, et al. ("Palumbo"), Municipal Reinsurance Health Insurance Fund, et al. ("Municipal Reinsurance") and New Mexico UFCW Union's and Employers' Health Welfare Trust Fund, et al. ("NM UFCW") have brought suit against Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc. ("Forest"). Before the Court are motions to dismiss filed by the defendants on three grounds: lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and failure to plead fraud allegations with particularity pursuant to Fed. R. Civ. P. 9(b).

## I.   Background

### A.   Factual Background

This collection of lawsuits arises out of Forest's marketing and sales of two related anti-depressant drugs: Celexa and Lexapro. In the interest of brevity, Celexa and citalopram (the

trade name for Celexa), along with any generic equivalents manufactured by Forest, will be referred to collectively as "Celexa". The following facts are as alleged in the plaintiffs' complaints.

The crux of the allegations is that from about 2001 to 2005, Forest illegally promoted the drugs for off-label use in pediatric and adolescent patients. The Food and Drug Administration ("FDA"), however, had only approved the drugs for use in adult patients and, with respect to Celexa, the FDA had specifically denied approval for pediatric use.

In September, 1999, Forest submitted protocols to the FDA for two double-blind, placebo-controlled studies on the pediatric use of Celexa. The first was conducted in Europe by Lundbeck ("the Lundbeck study") and the other at the University of Texas by Karen Wagner ("the Wagner study"). In mid-2001, Forest executives received the results of the two studies. The Wagner study indicated that Celexa was more effective than a placebo in treating pediatric depression. The Lundbeck study indicated that Celexa was no more effective than a placebo and that it caused more suicidal ideation compared to the patients taking a placebo. Forest submitted the results of the two studies to the FDA in April, 2002, seeking a six-month extension of patent exclusivity. In September, 2002, the FDA denied Forest's application for a pediatric indication for Celexa, finding that the Lundbeck study

-2-

"is a clearly negative study that provides no support for the efficacy of Celexa in pediatric patients with [major depressive disorder]."

With respect to Forest's marketing scheme, the plaintiffs allege that from mid-2001 through at least 2005, Forest 1) misled physicians by promoting the results of the positive Wagner study while failing to disclose the results of the contemporaneous Lundbeck study and 2) illegally paid various kickbacks to physicians to induce them to prescribe the drugs.

The plaintiffs allege that, for three years, Forest failed to disclose the negative Lundbeck study to its thousands of sales representatives, pediatric specialists whom it hired to give promotional speeches on Celexa, its Executive Advisory Board which was responsible for conveying information to sales personnel, its Professional Affairs Department, which disseminates information to physicians, or its pediatric researchers, including Dr. Wagner.

During those three years, Forest allegedly engaged in an aggressive marketing campaign for Celexa in which the Wagner study was highly publicized and the Lundbeck study was never mentioned.  Dr. Wagner, allegedly ignorant of the Lundbeck study, gave presentations to various professional groups on the findings of her study.  Forest also allegedly caused news stories about the Wagner data to be disseminated in national and local media

and held 20 Continuing Medical Education ("CME") teleconferences addressing the Wagner study results.

The plaintiffs maintain that Forest's failure to disclose the Lundbeck study results to the above-named groups and individuals caused those people to make false or misleading statements about Celexa to the public, physicians and patients. For example, in June, 2004, The American Journal of Psychiatry published an article by Dr. Wagner in which she discussed her placebo-controlled trial on pediatric use of Celexa but did not mention the Lundbeck study.

On June 21, 2004, the New York Times published an article revealing the negative results of the Lundbeck study and observing that the article published by Dr. Wagner failed to mention the Lundbeck study.  Three days later, Forest issued a press release acknowledging that the Lundbeck study and another double-blind study of the drug Lexapro did not show efficacy in comparison to placebo.

In early 2005, Forest changed the Celexa label to include a black-box warning required pursuant to a public health advisory issued by the FDA on March 22, 2004.  The warning stated that the safety and effectiveness of the drug in the pediatric population had not been established and that

> [t]wo placebo-controlled trials in 407 pediatric
> patients with [major depressive disorder] have been
> conducted with Celexa, and the data were not sufficient
> to support a claim for use in pediatric patients.

-4-

In 2007, the Celexa label was modified again to state that, in
placebo-controlled selective serotonin reuptake inhibitor
("SSRI") trials in both children and adults,

> [t]here was considerable variation in risk of
> suicidality among drugs, but a tendency toward an
> increase in the younger patients for almost all drugs
> studied.

In addition to the allegedly misleading statements
concerning the safety and efficacy of Celexa for pediatric use,
the plaintiffs also assert that Forest illegally induced
physicians to prescribe Celexa through a system of kickbacks,
such as honoraria for participation in advisory boards,
restaurant gift certificates, lavish entertainment and research
grants.  The advisory boards, which were allegedly held between
2001 and 2005, consisted of physicians who received monetary
compensation to give feedback on the marketing of Celexa.  The
plaintiffs claim that the payment for being on such an advisory
board was intended as an incentive for physicians to write more
prescriptions for Celexa.

The plaintiffs also allege that Forest induced physicians to
prescribe Celexa through "preceptorships" which were an
ostensible training opportunity where Forest sales
representatives would interview physicians about how Celexa was
used in practice.  Physicians allegedly received up to $1,000 for
participation.

### 1.   Qui Tam Suits

In 2003 and 2005, two qui tam law suits were filed against Forest in this district by Christopher Gobble (Civil Action No. 03-10395-NMG) and Joseph Piacentile (Civil Action No. 05-10201-NMG).  In February, 2009, the United States filed a Complaint in Intervention alleging that, as a result of its wrongdoing, Forest caused false claims to be submitted to federal health care programs in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1).  The government also asserted a claim for unjust enrichment.  On November 1, 2010, this Court approved a final settlement in the qui tam suits in which the parties agreed to dismiss all of the claims against Forest except Gobble's claim for relief from retaliatory actions by an employer pursuant to 31 U.S.C. § 3730(h).

### 2.   The MDL Cases

Presumably based upon this Court's experience with the qui tam cases, the MDL Panel ordered five related cases to be transferred to this Court in September, 2009.  The complaints in the transferred cases allege the same basic facts as set forth in the qui tam complaints with some minor variations.

### a.   The Wilcox Case

Wilcox brings an action seeking to certify a class under Rule 23 of the Federal Rules of Civil Procedure.  The proposed class consists of all individuals in the state of California who,

for purposes other than resale, purchased, reimbursed and/or paid for Celexa during the period from 2005 through the present for use by a minor.  Wilcox claims that Forest violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17209 and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500-17509 by making "fraudulent, false, unlawful and misleading representations that [Celexa] was safe and effective for minor children."

Wilcox alleges that his son, Robert Wilcox ("Robert") was first prescribed Celexa on July 25, 2003 at the age of twelve and that, during the next six years, Robert took and Wilcox paid for Celexa.  Wilcox further alleges that 1) Forest's representations with respect to the safety of prescribing Celexa to children and concealment of material information misled Robert's physician and caused him to prescribe and continue prescribing Celexa to Robert despite the fact that the medication was "not efficacious" and 2) Forest's dissemination of misleading information about Celexa was intended to "induce doctors to prescribe, and consumers to purchase, the drugs."

Wilcox seeks to recover all amounts that he and other class members paid for pediatric prescriptions of Celexa from 2005 through the present, interest, attorney's fees, expenses, and any further relief the Court deems necessary, just and proper.

b.   **The Jaeckel and Palumbo Cases**

Plaintiffs Jaeckel and Palumbo also bring actions seeking to certify classes under Rule 23 of the Federal Rules of Civil Procedure.  The proposed classes include all individuals and entities in the United States and its territories (other than state governmental entities) who, for purposes other than resale, purchased, reimbursed and/or paid for Celexa or Lexapro under the trade names of Citalopram or Escitalopram during the period from 1998 through the present for consumption by a minor.

Jaeckel and Palumbo bring claims against Forest for 1) unjust enrichment, 2) fraudulent concealment and misrepresentation, 3) fraud and 4) violations of the Missouri Consumer Protection Act, Mo. Rev. Stat. § 407.010, et seq. ("Missouri CPA").  Jaeckel and Palumbo seek recovery of all amounts they and other class members paid for pediatric prescriptions of Celexa and Lexapro from 1998 to the present, disgorgement of all monies acquired by Forest through the sales of Celexa and Lexapro for use by minors, attorney's fees, costs, interest, other damages allowed by law and other relief that the Court deems necessary or appropriate.

B.   **Procedural History**

In March, 2009, Jaeckel filed her complaint in the United States District Court for the Eastern District of Missouri (Civil Action No. 09-11518).  In September, 2009, Palumbo filed her

complaint in the United States District Court for the Southern
District of New York (Civil Action No. 09-11532).  That same
month, the cases were transferred to this Court for consolidated
pretrial proceedings.  In December, 2009, Wilcox filed his
initial complaint in the United States District Court for the
Northern District of California (Civil Action No. 10-10154).
Four other related cases (Civil Action Nos. 09-11538, 09-11539,
09-11524 and 09-12070), including the Municipal Reinsurance and
NM UFCW actions, were also filed but they were voluntarily
dismissed in March and June of 2010.

In April, 2010, Forest moved to dismiss the Wilcox complaint
(Docket No. 35), the Jaeckel and Palumbo complaints (Docket No.
37), and the Municipal Reinsurance and NM UFCW complaints (Docket
No. 40).  That same month, Wilcox filed a first amended complaint
("the Wilcox FAC") (Docket No. 42).  In May, 2010, Forest moved
to dismiss the Wilcox FAC (Docket No. 44).

## II.  <u>Analysis</u>

### A.  **Motion to Dismiss Wilcox's Original Class Action Complaint**

The Court first considers Forest's motion to dismiss
Wilcox's original class action complaint.  Because Wilcox amended
his complaint, his original complaint is no longer operative and
the motion to dismiss will be denied as moot.  <u>See</u> <u>Connectu</u>
<u>LLC</u> v. <u>Zuckerberg</u>, 522 F.3d 82, 91 (1st Cir. 2008).

**B.    Motion to Dismiss the Municipal Reinsurance and NM UFCW Third-Party-Payer Complaints**

The Court next considers Forest's motion to dismiss the Municipal Reinsurance and NM UFCW third-party-payer complaints. On June 23, 2010, third-party-payer plaintiffs Municipal Reinsurance and NM UFCW and the defendants stipulated to a voluntary dismissal without prejudice of the third-party-payer claims pursuant to Fed. R. Civ. P. 41(A)(1)(a)(ii).  The motion to dismiss will, therefore, be denied as moot.

**C.    Motion to Dismiss the First Amended Wilcox Complaint**

**1.    Standing Under the California UCL and FAL**

Forest asserts that Wilcox lacks standing to bring a claim under the California UCL and FAL and fails to state a claim upon which relief can be granted because he does not allege sufficient facts to establish 1) a causal link between Forest's allegedly wrongful marketing activities and Wilcox's purchases or 2) that he suffered a cognizable injury.

**a.    Legal Requirements for Standing**

The "case or controversy" limitation of Article III of the United States Constitution requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.

<u>Simon</u> v. <u>E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 41-42 (1976).
To have standing in federal court, plaintiffs must allege a
cognizable injury, a causal nexus between the injury and the
claimed wrong and a substantial likelihood that the injury will
be redressed by a favorable decision.  <u>See</u> <u>Raines</u> v. <u>Byrd</u>, 521
U.S. 811, 818-19 (1997).  Once a defendant moves to dismiss under
Rule 12(b)(1), subject matter jurisdiction is presumed lacking
and the plaintiff bears the burden of establishing such
jurisdiction.  <u>See</u> <u>Corliss</u> v. <u>Levesque Auto Servs., Inc.</u>, No.
Civ-A-04-10834, 2004 WL 2337019, at *1 (D. Mass. Oct. 13, 2004).

Under the California UCL and FAL, a plaintiff is entitled
only to equitable relief, such as an injunction or restitution,
and not money damages.  Cal. Bus. & Prof. Code §§ 17203, 17204,
17535; <u>In re Tobacco II Cases</u>, 207 P.3d 20, 29 (Cal. 2009)
("<u>Tobacco II</u>").  To have standing to bring a claim for and to
recover restitution under the UCL, the plaintiff must show that
he or she "suffered injury in fact and has lost money or property
as a result of the unfair competition."  Cal. Bus. & Prof. Code
§§ 17203, 17204.  To have standing to bring a claim for and to
recover restitution under the FAL, a plaintiff must prove that he
or she has lost to the defendant an "interest in money or
property, real or personal, which may have been acquired by means
of any practice in this chapter declared to be unlawful."  Cal.
Bus. & Prof. Code § 17535.

        b.   Causation

    Forest argues that Wilcox's FAC fails to allege that
Robert's unidentified physician ever saw or heard of, and
therefore relied upon, any of Forest's alleged misrepresentations
in deciding to prescribe Celexa to Wilcox's son.  To establish
standing to bring a claim for fraudulent business practices under
the UCL, a plaintiff "must demonstrate actual reliance on the
alleged deceptive or misleading statements".  In re Actimmune
Mktg. Litig., No. C 08-02376 MHP, 2009 WL 3740648, at *11 (N.D.
Cal. Nov. 6, 2009); Tobacco II, 207 P.3d at 26; Durell v. Sharp
Healthcare, No. D054261, 2010 WL 1529322, at *1 (Cal. Ct. App.
Apr. 19, 2010).  In a claim under the FAL, the plaintiff need not
show actual reliance.  Fletcher v. Sec. Pac. Nat'l Bank, 591 P.2d
51, 57 (Cal. 1979).  Thus, if Wilcox sufficiently pleads reliance
under the UCL, he has also stated a claim under the less
stringent FAL.  See id.

    In Tobacco II, the Supreme Court of California held that 1)
actual reliance is proved by showing that the defendant's alleged
misrepresentation or non-disclosure was an "immediate cause of
the plaintiff's injury-producing conduct", 2) "a presumption, or
at least an inference, of reliance arises whenever there is a
showing that a misrepresentation was material", 3) a
misrepresentation is material if, in its absence, "the plaintiff
in all reasonable probability would not have engaged in the

                            -12-

injury-producing conduct" if he or she had not relied on the alleged misrepresentations and 4) materiality is generally a question of fact.  207 P.3d at 39.  In the same case, the Court also held:

> a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.

Id. at 40.

Wilcox's FAC states that Robert's physician was "misled" by Forest's alleged misrepresentations and that those misrepresentations were "material" to the physician's decision to prescribe and continue prescribing Celexa to Robert for six years.  Forest counters that the misrepresentations could not have been "material" to the physician's decision because he continued to prescribe the medication for five years after the Lundbeck study was disclosed to the public in 2004.  Based on the facts alleged in Wilcox's FAC, a reasonable juror could find that knowledge of the Lundbeck study would be material to a physician's decision to prescribe Celexa and that such materiality was proof that Robert's physician (and the physicians of the other class members) relied on Forest's alleged misrepresentations in deciding to prescribe Celexa.

The fact that Forest issued a press release in 2004 and changed its label in 2005 does not automatically mean that class members and their physicians could not have reasonably relied on

-13-

the misrepresentations after those events.  In <u>Tobacco II</u>, the
court held that

> an allegation of reliance is not defeated merely
> because there was alternative information available to
> the consumer-plaintiff, even regarding an issue as
> prominent as whether cigarette smoking causes cancer.

<u>Id.</u> at 41.  The Court concludes that a reasonable juror could
find that the class members and their physicians reasonably
relied on Forest's representations.  For that reason, Wilcox has
sufficiently pled causation, i.e., reliance.

### c.   Injury

Forest contends that Wilcox has no claim for restitution
because the mere purchase of a product does not constitute
injury-in-fact and Wilcox does not allege the difference between
the values of the Celexa as advertised and as purchased.

Indeed, the intermediate appellate court in California has
held that the purchase of a product alone does not constitute
injury-in-fact under the UCL.  <u>Medina</u> v. <u>Safe-Guard Products</u>, 78
Cal. Rptr. 3d 672, 678 (Cal. App. 4th 2008).  A plaintiff must
also allege that 1) he or she did not want the product in the
first place, 2) the product was unsatisfactory <u>or</u> 3) the product
was worth less than what the plaintiff paid for it.  <u>Id.</u>  Such
allegations are sufficient for a pleading of damages under the
FAL as well.  <u>Fletcher</u>, 591 P.2d at 57.

Here, Wilcox alleges that Celexa was "inappropriate" and
"not efficacious" for his son.  Applying the test for injury

-14-

discussed by the California appellate court in <u>Medina</u> v. <u>Safe-Guard Products</u>, the Court finds that Wilcox has sufficiently pled damages under the UCL and FAL because, by stating that the drug was "inappropriate" and "not efficacious", he has alleged that the product was unsatisfactory.  <u>See</u> 78 Cal. Rptr. at 678.

In sum, the Court finds that Wilcox has standing to bring a claim under the UCL and FAL because he has sufficiently pled both causation and injury.

### 2.   Failure to State a Claim Under the UCL

In addition to causation and injury, Wilcox must allege that Forest engaged in unfair competition in order to state a claim under the UCL.  Cal. Bus. & Prof. Code § 17200.  Forest maintains that Wilcox has failed to state a claim upon which relief can be granted because he has not sufficiently pled unfair competition.

### a.   Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  <u>Nollet</u> v. <u>Justices of the Trial Court of Mass.</u>, 83 F. Supp. 2d 204, 208 (D. Mass. 2000) <u>aff'd</u>, 248 F.3d

1127 (1st Cir. 2000).  Furthermore, the Court must accept all
factual allegations in the complaint as true and draw all
reasonable inferences in the plaintiff's favor.  Langadinos v.
Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the
facts in the complaint are sufficient to state a cause of action,
a motion to dismiss the complaint must be denied.  See Nollet, 83
F. Supp. 2d at 208.

     Although a court must accept as true all of the factual
allegations contained in a complaint, that doctrine is not,
however, applicable to legal conclusions.  Ashcroft v. Iqbal, 129
S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal
elements, supported by mere conclusory statements, do not suffice
to state a cause of action.  Id.  Accordingly, a complaint does
not state a claim for relief where the well-pled facts fail to
warrant an inference of any more than the mere possibility of
misconduct.  Id. at 1950.

### b.   Unlawful Business Practice

     The UCL defines unfair competition as including "any
unlawful, unfair or fraudulent business act or practice and
unfair, deceptive, untrue or misleading advertising" or any act
prohibited by § 17500.  Cal. Bus. & Prof. Code § 17200.  Because
those elements of liability are disjunctive, Wilcox need only
allege that Forest's practices are actionable under one of them.

     Forest argues that Wilcox's complaint fails to plead an

-16-

"unlawful" practice.  Wilcox alleges that the defendants violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 355(a)-(b) ("FDCA"), which bans the off-label promotion of an approved drug. The FDCA includes an express preemption provision which requires that all proceedings to enforce the FDCA be brought only in the name of the United States.  21 U.S.C. § 337(a).  Thus, if Wilcox were only pleading that Forest's actions were in violation of the FDCA, his claim under the UCL would be preempted because that would amount to using the UCL as a vehicle for bringing a private cause of action for violations of the FDCA.  See In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig., 590 F. Supp. 2d 1282, 1289-91 (C.D. Cal. 2008).  This is not the case here, however, because Wilcox also argues that specific claims that Forest made were deceptive and fraudulent.  See id.  Thus, he has stated a claim under the UCL for unlawful business practices that is not preempted by the FDCA.  See id.

### c.   Unfair Business Practice

Forest argues that Wilcox's claims do not meet the test for unfair business practices set forth in section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(n), which has been adopted by the California courts in UCL cases.  Camacho v. Auto. Club of S. Cal., 48 Cal. Rptr. 3d 770, 777 (Cal. Ct. App. 2006)("the Camacho test").  Under that test, a business practice is unfair when the consumer's injury is 1) substantial, 2) not "outweighed

by any countervailing benefits to consumers or competition" and 3) one that "consumers themselves could not reasonably have avoided." Id. The California Supreme Court used a different test in another case (Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,973 P.2d 527, 544 (Cal. 1999)). Nevertheless, because Forest argues for application of the less stringent Camacho test, the Court will apply that analysis. 48 Cal. Rptr. 3d at 777.

Applying the Camacho test, the Court finds that Wilcox has adequately pled facts establishing that Forest's conduct was unfair. The cumulative effect of all class members purchasing an allegedly ineffective or unsafe drug instead of an alternative medication amounts to substantial consumer injury. See id. Additionally, neither consumers nor competition benefit from the non-disclosure of a study revealing the ineffectiveness or dangerousness of a drug, as is the case here. Finally, given that the non-disclosure was not publicly known until June, 2004, Wilcox's injury could not have been reasonably avoided. See Camacho, 48 Cal. Rptr. 3d at 777. Thus, Wilcox states a claim for unfair business practices.

### 3. Failure to Plead Fraud Allegations with Particularity

#### a. Legal Standard

Because Wilcox's claim under the California UCL and FAL are grounded in fraud, his allegations must be pled with

particularity.  Fed. R. Civ. P. 9(b); Wendell v. Johnson &
Johnson, No. C 09-04124 CW, 2010 WL 271423, at *3 (N.D. Cal. Jan.
20, 2010).  At a bare minimum, the complaint must allege the
"time, place, and content of an alleged misrepresentation with
specificity".  S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir.
2010).  The plaintiff must also allege the "identity of the
person making the misrepresentation and what he obtained
thereby."  U.S. ex rel. Owens v. First Kuwaiti Gen. Trading &
Contracting Co., No. 09-1899, 2010 WL 2794369, at *6 (4th Cir.
2010); Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23,
29 (1st Cir. 2004).  "Malice, intent, knowledge, and other
condition of mind of a person may be averred generally."  Fed. R.
Civ. P. 9(b).  Federal Rule of Civil Procedure 9(b) must be read
in conjunction with Rule 8, which requires that averments in
pleadings be concise and direct.  See McGinty v. Beranger
Volkswagon, Inc., 633 F.2d 226, 228 (1st Cir. 1980).

### b.  Application

The Court finds that Wilcox's fraud allegations are
sufficiently definite.  Wilcox describes in detail the allegedly
deceptive advertising campaign, including the assertions that the
dissemination of misleading information occurred in an article
published in a nationally-distributed journal, at CME
teleconferences and at meetings with Forest's executive advisory
board.  The recipients of the deceptive information are alleged

to be the physicians of the plaintiffs or the plaintiffs themselves.  Thus, Wilcox adequately alleges 1) the time and place of the fraudulent representations, 2) the identities of the perpetrators and recipients and 3) the content of the misrepresentations.  See S.E.C., 597 F.3d at 442; U.S. ex rel. Owens, 2010 WL 2794369, at *6.  Forest's fourth argument, that causation is not pled, has been addressed above and is without merit.

Forest also argues that Wilcox's allegation that Celexa was "not efficacious" for his son is not sufficiently definite.  It relies on Wendell v. Johnson & Johnson, where the United States District Court for the Northern District of California held that the plaintiff's allegations that the defendants' drugs "were not safe and were unfit" were too vague to meet the pleading requirement in Fed. R. Civ. P. 8(a).  2010 WL 271423, at *5.  Thus, merely pleading that a drug is "unsafe" is insufficient.

Wilcox, however, puts forth the Lundbeck study as evidence that Celexa is unsafe for children and adolescents.  Thus, he does more than simply state that the drug is unsafe.  Claiming that Celexa was "inappropriate" and "not efficacious" for his son is an adequate allegation at this stage in the litigation.  Thus, the Court finds that Wilcox has pled his fraud claims with sufficient particularity.

### 4.  Statute of Limitations

The statute of limitations under the UCL is four years. Cal. Bus. & Prof. Code § 17208.  There is no express provision mandating a statute of limitations for claims under the FAL, however, the California statute of limitations that applies to civil actions created by statutes is three years.  Cal. Code Civ. Pro. § 338.  Justices Masterson, William (Retired) & Baron, Elizabeth (Retired), California Civil Practice Business Litigation §61:51 (2010).  Forest asserts that Wilcox's claims under the UCL are time-barred because the alleged acts of deception occurred more than four years before December 23, 2009, when Wilcox filed his complaint.

Under the UCL, the statute of limitations generally accrues when the defendant's conduct occurs, not when the plaintiff learns about the conduct.  Aryeh v. Canon Bus. Solutions, Inc., 111 Cal. Rptr. 3d 211, 216 (Cal. Ct. App. 2010).  When a defendant's alleged conduct occurs over a period of time, the cause of action accrues upon the occurrence of the initial conduct.  Id.; Salenga v. Mitsubishi Motors Credit of Am., 107 Cal. Rptr. 3d 836, 841 (Cal. Ct. App. 2010)(holding that the UCL statute of limitations begins to toll "when, under the substantive law, the wrongful act is done and the obligation or liability arises, i.e., when the action may be brought.").

Wilcox does not allege that Forest engaged in any wrongful

-21-

conduct after December 23, 2005 (four years before he filed his complaint).  Thus, applying the general rule for accrual, Wilcox's claim under the UCL and FAL would be time-barred. Consequently, Wilcox argues for the application of the so-called "discovery rule".  El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1039 (9th Cir. 2003).

If the "discovery rule" applies, the statute of limitations for tort actions in California does not accrue until the plaintiff "knew or should have known of the wrongful conduct at issue."  Id.  The "discovery rule" applies where wrongful acts are "committed in secret" and "where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."  Id.  Because the discovery rule is an exception to the general rule, the plaintiff has the burden of pleading and proving that he reasonably did not discover the alleged misconduct until within the statutes of limitations period. Hobart v. Hobart Estate Co., 159 P.2d 958, 972 (Cal. 1945).

The Court finds that the discovery rule applies in the instant action because the very basis for Wilcox's allegations is that Forest concealed material information regarding the safety and effectiveness of Celexa in children and adolescents.  Such facts were allegedly hidden from the public until June, 2004.

Applying the discovery rule, Wilcox must allege that he reasonably did not discover Forest's misrepresentations until

-22-

after December 23, 2006 with respect to the FAL claim and December 23, 2005 with respect to the UCL claim.  Even drawing all inferences in his favor, Wilcox fails to do so.  He simply does not allege when he discovered the alleged misrepresentations.  The Court will, therefore, allow Forest's motion to dismiss the Wilcox action for failure to state a claim upon which relief can be granted but it will dismiss the case without prejudice.

     **5.**   **Leave to Amend**

        **1.**   **Standard**

Under Fed. R. Civ. P. 15(a), leave to amend before trial will be freely given "when justice so requires".  Despite this liberal amendment policy, the Court can deny a motion for leave to amend if amendment would result in undue delay or prejudice, the moving party has a bad faith or dilatory motive, the moving party has repeatedly failed to cure deficiencies with previous amendments or the amendment would be futile.  <u>Foman</u> v. <u>Davis</u>, 371 U.S. 178, 182 (1962).

        **2.**   **Application**

Wilcox filed his FAC two weeks after Forest filed its motion to dismiss Wilcox's original claims.  Nevertheless, given that Wilcox has sufficiently pled his claims with the exception of the statute of limitations issue and the latter failure is susceptible to correction, the Court will, in the interest of

-23-

justice, afford Wilcox a short additional period to amend, namely 30 days.

### D.   Motion to Dismiss the Jaeckel and Palumbo Consumer Complaints

#### 1.   Choice of Law

Forest moves for dismissal of the Missouri state law claims brought by non-Missouri-resident plaintiffs in the Jaeckel and Palumbo class actions, arguing that the applicable choice-of-law principles require that the law of each plaintiff's home state govern his or her claims.  Forest argues that the consumer's home state has the greater interest in claims for unfair, misleading or fraudulent business practices.

When a district court's jurisdiction is based upon diversity of citizenship, the court must apply the choice-of-law rules of the forum state.  Klaxon v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941).  When actions are transferred to a court as part of a multi-district litigation, the court must apply the choice-of-law rules of the states where the actions were first filed.  In re Grand Theft Auto Video Game Consumer Litig., 251 F.R.D. 139, 147 (S.D.N.Y. 2008) ("Grand Theft Auto").  Thus, the Court must analyze choice of law in the Jaeckel case under Missouri choice-of-law rules and, in the Palumbo case, under New York choice-of-law rules.

The threshold question in a choice-of-law analysis in both

-24-

New York and Missouri is whether there is a conflict between the substantive law in the relevant jurisdictions.  <u>Grand Theft Auto</u>, 251 F.R.D. at 147; <u>see</u> <u>Goede</u> v. <u>Aerojet Gen. Corp.</u>, 143 S.W. 3d 14, 24 (Mo. Ct. App. 2004).  In the instant action, Forest argues that there are differences between the applicable Missouri law and the laws of the plaintiffs' homes states.  Indeed, there are significant differences in the statutes of limitations periods in Missouri and the plaintiffs' home states, which include Utah, Connecticut, Texas and Pennsylvania.[1]

### a.   Jaeckel: Missouri Choice-of-Law Analysis

In cases alleging fraud and misrepresentation, Missouri applies the "most significant relationship" analysis laid out in the Restatement (Second) of Conflict of Laws § 148 (1971).  <u>E.g.</u>, <u>Goede</u>, 143 S.W. 3d at 24.  When the allegedly false representations and the plaintiff's action in reliance thereon took place in the same state, the local law of that state applies.  Restatement (Second) of Conflict of Laws § 148(1). When a plaintiff's reliance on allegedly false representations

_____

[1]   In Missouri, the statute of limitations for fraud, Missouri CPA claims and unjust enrichment actions is five years. Mo. Code § 516.120 (2005); <u>Pitman</u> v. <u>City of Columbia</u>, 309 S.W. 3d 395, 405 (Mo. Ct. App. 2010).  The statutes of limitations in the plaintiffs' home states for the equivalents claims are: three years in Utah and Connecticut, two years in Pennsylvania and four years in Texas.  Conn. Gen. Stat. § 52-577 (2010); 42 P. Cons. Stat. §5524(7) (2009); Utah Code Ann. § 78B-2-305(2) (West 2009); <u>Best</u> v. <u>Exxon Mobil Corp.</u>, No. H-09-0625, 2010 WL 1169984, at *6-8 (S.D. Tex. Mar. 23, 2010).

took place in a state other than that where the false

representations were made, courts in Missouri will look at a

number of factors to determine which state has the "most

significant relationship to the occurrence and the parties."

Goede, 143 S.W. 3d at 24.  Those factors include:

> (a) the place, or places, where the plaintiff acted in
> reliance upon the defendant's representations, (b) the
> place where the plaintiff received the representations,
> (c) the place where the defendant made the
> representations, (d) the domicile, residence,
> nationality, place of incorporation and place of
> business of the parties[.]

Restatement (Second) of Conflict of Laws § 148(2) (1971).   The

Court must also consider the factors laid out in § 6 of the

Restatement (Second) of Conflict of Laws:

> (a) the needs of the interstate and international
> systems, (b) the relevant policies of the forum, (c)
> the relevant policies of other interested states and
> the relative interests of those states in the
> determination of the particular issue, (d) the
> protection of justified expectations, (e) the basic
> policies underlying the particular field of law, (f)
> certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the
> law to be applied.

Id. § 6.

In false advertising, fraud and misrepresentation cases,

unlike personal injury cases, the principal location of the

defendant's alleged misrepresentations is more important than the

place of loss when the place of loss is difficult to identify.

Id. § 148, comment c; see Grove v. Principal Mut. Life Ins. Co.,

14 F. Supp. 2d 1101, 1106 (S.D. Iowa 1998); First Nat. Bank, v. Heuer, 702 F. Supp. 173, 175 (N.D. Ill. 1988).

### b.    Palumbo: New York Choice-of-Law Analysis

Under New York choice-of-law rules, courts must apply "the law of the jurisdiction, which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Sussman v. Bank of Israel, 801 F. Supp. 1068, 1074 (S.D.N.Y. 1992).  This so-called "interest analysis" consists of two determinations:

> (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss.

Padula v. Lilarn Props. Corp., 84 N.Y. 2d 519, 521 (N.Y. 1994).

If the purpose of the law is to regulate conduct, then the court applies the law of the place where the tortious conduct occurred.  Conversely, if the purpose of the law is to allocate loss, then the court applies the law of the place where the loss occurred.  Id. at 522.  Conduct-regulating laws are deterrence-oriented and "have the prophylactic effect of governing conduct to prevent injuries from occurring".  Id.  Loss-allocating laws are those which

> prohibit, assign or limit liability after the tort occurs, such as charitable immunity statutes, guest statutes, wrongful death statutes, vicarious liability statutes and contribution rules.

Id.

Federal courts in New York have held that statutes governing fraud-related claims are conduct-regulating and, consequently, the jurisdiction with significant contacts is the "the jurisdiction where the fraud originated and where substantial activities in furtherance of the fraud were committed." Pension Plan v. Bank of Am. Sec., LLC, 446 F. Supp. 2d 163, 194-95 (S.D.N.Y. 2006)(quoting Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001)); see, e.g., Sussman, 801 F. Supp. at 1075 (stating that "the place where the victim of fraud or negligence suffered economic loss [is] less significant for choice of law purposes than the law of the place by which the defendant's conduct is evaluated.").

### c. Choice-of-Law Determination Best Left for a Later Stage in the Proceedings

In the case at bar, more facts are needed to ascertain the place of the plaintiffs' injury and reliance.  Similarly, more information is needed to determine whether the allegedly fraudulent statements were disseminated from Missouri or New York, where the defendants have their principal places of business.[2]

If a court is unable to ascertain where the challenged

---

[2]  Forest Pharmaceuticals, Inc. is a Delaware corporation with its principal place of business in St. Louis, Missouri. Forest Laboratories, Inc. is a Delaware corporation with its principal place of business in New York, New York.

conduct or injury occurred, making a choice of law determination at the pleading stage is inappropriate. See In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig., No. 09 Md.2023, 2010 WL 1268196, at *14 (E.D.N.Y. Mar. 30, 2010). This is because further discovery during the class certification phase could reveal that the proposed class does not have the requisite commonality in the time, place and cause of their injuries. See, e.g., id.; Rios v. State Farm Fire & Cas. Co., 469 F. Supp. 2d 727, 741-42 (S.D. Iowa 2007); In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 541 (D.N.J. 2004). Thus, the Court will wait until the class certification stage to determine which law to apply in the Jaeckel and Palumbo actions.

### 2.   Statute of Limitations

The Court need not decide whether the plaintiffs' claims are time-barred at this juncture because the issue is dependent on which state's law applies and the Court will not make such a determination until the class certification stage.

### 3.   Failure to State a Claim Under the Missouri CPA

To state a claim under the Missouri CPA, a plaintiff may bring a civil action if he or she is a

> person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020[.]

Mo. Rev. Stat § 407.025.1. Forest argues that the plaintiffs

-29-

have failed to plead an "ascertainable loss" or causation.

### a.   Ascertainable Loss

Forest avers that the plaintiffs' failure to allege that the prescriptions they purchased were ineffective, unsafe, or worth less than allegedly represented, or that the drugs caused negative health effects constitutes a failure to plead an ascertainable loss.  Jaeckel and Palumbo allege injury in the form of:

> (1) failing to receive full value for their direct or indirect payment of money for Celexa and Lexapro for pediatric use; (2) incurring personal debt and/or out-of-pocket expenditures to purchase Celexa and Lexapro for pediatric use; (3) payment for Celexa and Lexapro for pediatric use on behalf of purchasers; and (4) foregoing safe and effective alternative treatment options in reliance upon Defendant's misrepresentations that Celexa and Lexapro for pediatric use was effective and had a positive risk-benefit profile.

Jaeckel Complaint ¶ 125; Palumbo Complaint ¶ 114.

Purchasing a product in reliance on a deceptive statement does not amount to injury under the Missouri CPA.  See Craft v. Philip Morris Cos., Inc., No. 002-00406A, 2003 WL 23139381, at *5 (Mo. Cir. Dec. 31, 2003).  There must be some form of economic or property damage.  See id.  Injury under the Missouri CPA is sufficiently pled where the class members allege that the actual value of the item they purchased was less than the value of the item as it was represented to be at the time it was purchased.  Plubell v. Merck & Co., Inc., 289 S.W.3d 707, 715 (Mo. Ct. App. 2009).  This is known as the "benefit-of-the-

bargain rule". Id. At a minimum, the plaintiff must allege that 1) the defendant promised certain qualities which would make the product more valuable and 2) the product did not in fact have those attributes. See Craft, 2003 WL 23139381, at *6.

Jaeckel and Palumbo allege that they "fail[ed] to receive full value for their direct or indirect payment of money for Celexa and Lexapro for pediatric use." Although they do not explicitly allege that Celexa was ineffective or unsafe, all of their claims refer to Forest's failure to disclose information concerning the "risk-benefit profile and lack of efficacy of Celexa and Lexapro". Furthermore, they repeatedly claim that Forest's representations that Celexa was effective and had a positive risk-benefit profile for pediatric use were false and misleading. Drawing all inferences in the plaintiffs' favor, the Court finds that the plaintiffs have sufficiently pled an ascertainable loss under the Missouri statute.

### b. Causation

Forest maintains that the plaintiffs' failure to allege that they or their physicians were personally aware of or relied upon any of the alleged misrepresentations constitutes a failure to plead a plausible causal connection between the alleged misrepresentations and plaintiffs' individual purchases.

To state a claim under the Missouri CPA, a plaintiff must allege that the unlawful practice caused his or her loss but

need not allege that it caused him or her to make a purchase. See Plubell, 289 S.W.3d at 714.  Instead, "it is presumed from the statute that the customer has relied upon the obligation of fair dealing in making his purchase."  State ex rel. Webster v. Areaco Inv. Co., 756 S.W.2d 633, 637 (Mo. Ct. App. 1988).

Plaintiffs' make numerous allegations that members of the class and their physicians relied on Forest's alleged misrepresentations in deciding to purchase or prescribe Celexa. Thus, the Court finds that the plaintiffs have sufficiently pled causation to support a claim under the Missouri CPA.

### 3.    Subject Matter Jurisdiction

For the reasons stated above, the Court finds that Jaeckel and Palumbo have sufficiently pled both a causal connection and injury-in-fact to have standing to bring a claim under the Missouri CPA.  Hence the Court concludes that it has subject matter jurisdiction over their claims.

### 4.    Failure to State a Claim for Fraud, Fraudulent Concealment and Misrepresentation

Forest moves to dismiss the various fraud allegations brought by Jaeckel and Palumbo for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### a.    Fraudulent Concealment Claims by Plaintiffs Murret and Ehrlich

Forest moves to dismiss claims by plaintiffs Murret and

Ehrlich (members of the Palumbo putative class) for fraudulent misrepresentation or fraudulent concealment because their home states (Texas and Connecticut) do not recognize those as separate causes of action.  Such claims are treated as fraud claims.  See Parker v. Shaker Real Estate, 705 A.2d 210, 213 (Conn. App. Ct. 1998); Schlumberger Tech. v. Swanson, 959 S.W.2d 171, 181-82 (Tex. 1997).  That determination cannot be made, however, until the choice-of-law issue is resolved at the class certification stage.

### b.  Remaining Fraud Allegations

Although the choice-of-law issue will not be resolved at this juncture, the Court will analyze the motion to dismiss the plaintiffs' fraud claims under Missouri law because that is the law under which the plaintiff pled them.  In order to prevail on a claim for fraud and fraudulent misrepresentation in Missouri, the plaintiff must prove:

> (1) a representation; (2) its falsity; (3) its
> materiality; (4) the speaker's knowledge of its falsity
> or ignorance of its truth; (5) the speaker's intent
> that it should be acted on by the person in the manner
> reasonably contemplated; (6) the hearer's ignorance of
> the falsity of the representation; (7) the hearer's
> reliance on the representation being true; (8) the
> hearer's right to rely thereon; and (9) the hearer's
> consequent and proximately caused injury.

Renaissance Leasing, LLC v. Vermeer Mfg. Co., No. SC 90358, 2010 WL 3430449, at *13 (Mo. Aug. 31, 2010).

Forest argues that the plaintiffs fail to state a claim for

fraud or fraudulent concealment/misrepresentation because the plaintiffs fail to allege that reliance on the fraudulent representations caused them injury.  For the reasons explained above, the Court finds that the plaintiffs have adequately pled causation and injury and that, consequently, Forest's motion to dismiss will not be allowed on this basis.

### 5.   Failure to Plead Fraud with Particularity

The Court finds that the plaintiffs' allegations are sufficiently definite.  Similar to the allegations of Wilcox, Jaeckel and Palumbo describe the allegedly false advertising campaign in great detail, including the assertions that the dissemination of misleading information occurred in an article published in a nationally-distributed journal, at CME teleconferences and at meetings with Forest's executive advisory board.  The recipients of the purportedly misleading information are alleged to be the physicians of the plaintiffs or the plaintiffs themselves.

Thus, Jaeckel and Palumbo adequately allege 1) the time and place of the fraudulent representations, 2) the identities of the perpetrators and recipients and 3) the content of the misrepresentations.  For that reason, the Court concludes that they have pled their fraud claims with sufficient particularity.

### 6.   Failure to State a Claim:  Unjust Enrichment

In Missouri, unjust enrichment occurs when "a benefit is

conferred upon a party under circumstances in which retention of
that benefit without paying its reasonable value would be
unjust." <u>Pitman</u>, 309 S.W. 3d at 402.  In order to prevail on
such a claim in Missouri, the plaintiff must show:

> (1) a benefit conferred upon the defendant by the
> plaintiff; (2) appreciation by the defendant of the
> fact of such benefit; and (3) acceptance and retention
> by the defendant of that benefit under circumstances in
> which retention without payment would be inequitable.

<u>Id.</u>

Forest argues that the plaintiffs fail to plead that they
suffered an actual loss or that Forest received an undeserved
benefit (i.e. money for a product that didn't work).  The Court
disagrees.  The plaintiffs have sufficiently pled their claims
for unjust enrichment by claiming 1) the losses listed under the
Court's discussion of injury under the Missouri CPA and 2) that
Forest wrongfully benefitted from their losses in the form of
increased sales of its product.  Taking these assertions as true
and drawing all inferences in favor of the plaintiff, the Court
concludes that a jury could reasonably find that Forest was
unjustly enriched.  <u>See id.</u>

Forest also contends that the unjust enrichment claims
should be dismissed because equitable remedies will not be
granted when the plaintiffs have an adequate remedy at law.
While Forest states the law correctly, it is inappropriate to
dismiss equitable remedies at the pleading stage on this basis.

Under the Federal Rules of Civil Procedure, plaintiffs have the prerogative to plead alternative and even conflicting theories of recovery.  Fed. R. Civ. P. 8(d)(3); <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp. 2d at, 544.  For those reasons, Forest's motion to dismiss the unjust enrichment claims will be denied.

**ORDER**

In accordance with the foregoing,

1) defendants' motions to dismiss the Wilcox class action complaint and the Municipal Reinsurance and NM UFCW third-party-payer complaints (Docket Nos. 35 and 40) are **DENIED** as moot;

2) defendants' motion to dismiss the first amended Wilcox complaint (Docket No. 44) is **ALLOWED** and that complaint is **DISMISSED** without prejudice; and

3) defendants' motion to dismiss the Jaeckel and Palumbo consumer complaints (Docket No. 37) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 10, 2010

-36-