```
                  United States District Court
                    District of Massachusetts
_____
                               )
In re:                         )
                               )       MDL No.
CELEXA AND LEXAPRO MARKETING AND )     09-02067-NMG
SALES PRACTICES LITIGATION     )
_____)
```

### MEMORANDUM & ORDER

**GORTON, J.**

This collection of lawsuits arises out of the marketing and sales of two related anti-depressant drugs by defendant Forest Pharmaceuticals ("Forest"), Celexa and Lexapro. The crux of the allegations is that from about 2001 to 2005, Forest illegally promoted the drugs for off-label use in pediatric and adolescent patients. The Food and Drug Administration ("FDA") had, however, approved the drugs only for use in adult patients and, with respect to Celexa, the FDA had specifically denied approval for pediatric use. This Court rehearsed the facts extensively in its memorandum and order with respect to defendants' motion to dismiss and thus will not repeat them here.

### I. Procedural History

In March, 2009, the Jaeckel plaintiffs filed their complaint in the United States District Court for the Eastern District of Missouri. In September, 2009, the Palumbo plaintiffs filed their complaint in the United States District Court for the Southern District of New York. That same month, both cases were

transferred to this Court for consolidated pretrial proceedings. In December, 2009, plaintiff Wilcox filed his initial complaint in the United States District Court for the Northern District of California.  Four other related cases (Civil Action Nos. 09-11538, 09-11539, 09-11524 and 09-12070) were also filed with this Court but were voluntarily dismissed in March and June of 2010.

In April, 2010, Forest moved to dismiss the Wilcox complaint (Docket No. 35), the Jaeckel and Palumbo complaints (Docket No. 37), and the Municipal Reinsurance and NM UFCW complaints (Docket No. 40).  That same month, Wilcox filed a First Amended Complaint (Docket No. 42).  In May, 2010, Forest moved to dismiss the Wilcox First Amended Complaint (Docket No. 44).  In November, 2010, this Court dismissed the Wilcox First Amended Complaint without prejudice and denied the motion to dismiss the Jaeckel and Palumbo Complaints (Docket No. 58).  Wilcox filed a Second Amended Complaint (Docket No. 59) which defendants again moved to dismiss (Docket No. 66).  In January, 2011, this Court denied that motion (Docket No. 76).

Currently before the Court are plaintiffs' motions to certify certain classes (Docket Nos. 109 and 111).  The Court heard oral argument on the motions at a hearing on December 17, 2012.

II. **Motion to Certify Class by Jaeckal and Palumbo Plaintiffs**

Plaintiffs request that the Court certify two classes:

1. the Celexa class: all individuals and entities (excluding governmental entities) in the United States and its territories who, for purposes other than resale, purchased, reimbursed, and/or paid for Celexa for use by a person under the age of 18 during the period from July 17, 1998, through the date this Court certifies this case as a class action; and

2. the Lexapro Class: all individuals and entities in the United States and its territories who, for purposes other than resale, purchased, reimbursed, and/or paid for Lexapro for use by a person under the age of 18 during the period from August 14, 2002, through the date this Court certifies this case as a class action.

The plaintiffs also request certification of two subclasses for the Lexapro class: persons under the age of 12 and persons aged 12-17.

**A. Choice of Law Analysis**

Before reaching the motion for class certification, the court must conduct a choice of law analysis. When a district court's jurisdiction is based upon diversity of citizenship, the court must apply the choice-of-law rules of the forum state. Klaxon v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941). When actions are transferred to a court as part of multi-district litigation, the court must apply the choice-of-law rules of the states where the actions were first filed. In re Grand Theft Auto Video Game Consumer Litig., 251 F.R.D. 139, 147 (S.D.N.Y. 2008). Thus, the Court must analyze choice of law in the Jaeckel

case under Missouri choice-of-law rules as applied to the plaintiffs who are residents of Illinois (Angela Jaeckal), Utah (Melvin Fullmer) and Missouri (Jill Powell), and, in the Palumbo case, under New York choice-of-law rules as applied to the plaintiffs who are residents of Texas (Anna Murret), Connecticut (Jayne Ehrlich) and Pennsylvania (Martha and Peter Palumbo).

The threshold question in a choice-of-law analysis in both New York and Missouri is whether there is a conflict between the substantive law in the relevant jurisdictions. Grand Theft Auto, 251 F.R.D. at 147; Goede v. Aerojet Gen. Corp., 143 S.W. 3d 14, 24 (Mo. Ct. App. 2004). The Court summarily assessed choice of law at the Motion to Dismiss stage but deferred a more definite ruling on it until class certification. Plaintiffs assert that the Court should apply Missouri law in both the Jaeckel and Palumbo cases. Defendants contend that the law of the plaintiffs' home states must apply, rendering a class action infeasible.

### 1. Jaeckal: Missouri Choice-of-Law Analysis

In cases alleging fraud and misrepresentation, Missouri applies the "most significant relationship" analysis laid out in the Restatement (Second) of Conflict of Laws § 148 (1971). E.g., Goede, 143 S.W. 3d at 24. Under § 148(1) if the allegedly false representations and the plaintiff's action in reliance thereon took place in the same state, the local law of that state

applies, unless some other state has a more significant relationship to the particular issue.

In this case, although the sales representatives were hired by a Missouri corporation and used promotional materials that were made in Missouri, the relevant, alleged misrepresentations were the telephone calls made by Forest sales representatives to plaintiffs' doctors. At oral argument all parties acknowledged that the sales calls were made in plaintiffs' home states by sales representatives located in those states. Moreover, the actions in reliance on those false statements, including the purchase of the medications by plaintiffs, were also made in plaintiffs' home states.

Having found that the representations and the reliance on them took place in the same state, the Court must still consider under § 148(1) whether any other state has "a more significant relationship" under the principles stated in § 6. Those factors are:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Id. § 6.

Although plaintiffs correctly advise that Missouri has an

interest in policing the behavior of corporations within its borders, that interest does not outweigh the justified expectations of consumers that the laws of their home states will apply. Indeed, "consumer protection statutes are designed to protect consumers rather than to regulate corporate conduct." In Re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 82, 83 (D.Mass. 2005). Furthermore, as indicated in the Wilcox case which comprises part of this multi-district litigation in which a California plaintiff seeks certification of a class under California law, many plaintiffs expect and prefer the law of their home states to apply. In fact, this Court has previously found that, with respect to consumer protection laws, the law of the home state should govern. S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 93 (D. Mass. 2007)(because state consumer protection laws are intended to protect consumers, the Court concluded that the laws of the home states would govern). As a result, the Court concludes that the interests of Missouri do not outweigh those of plaintiffs' home states and the choice of law analysis under § 148(1) requires the Court to apply the law of plaintiffs' home states in the Jaeckal case.

Finally, even if the Court did find that the allegedly false representations were made from Missouri and thus the "plaintiff[s'] action in reliance took place . . . in a state

other than that where the false representations were made", consideration of the § 148(2) factors would still weigh in favor of applying the law of plaintiffs' home states. Those factors are:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

§ 148(2). Only the place where the representations were made would weigh in favor of application of Missouri law. All of the other factors either weigh evenly between the plaintiffs' and defendants' states or favor the application of the law of plaintiffs' home states. As a result, under either analysis, the Court must apply the law of plaintiffs' home states.

### 2. Palumbo: New York Choice-of-Law Analysis

Under New York choice-of-law rules, courts must apply "the law of the jurisdiction, which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." <u>Sussman</u> v. <u>Bank of Israel</u>, 801 F. Supp. 1068, 1074 (S.D.N.Y. 1992). This so-called "interest analysis" consists of two determinations:

> (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss.

Padula v. Lilarn Props. Corp., 84 N.Y. 2d 519, 521 (N.Y. 1994)(citing Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 198 (1985)). "[T]he significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." Shultz, 65 N.Y.2d at 197.

Conduct-regulating laws are deterrence-oriented and "have the prophylactic effect of governing conduct to prevent injuries from occurring". Id. at 522. Loss-allocating laws are those which

> prohibit, assign or limit liability after the tort occurs, such as charitable immunity statutes, guest statutes, wrongful death statutes, vicarious liability statutes and contribution rules.

Id. If the purpose of the law is to regulate conduct, then the court applies the law of the place where the tortious conduct occurred. Conversely, if the purpose of the law is to allocate loss, then the court applies the law of the place where the loss occurred. Id. Statutes governing fraud-related claims are conduct-regulating. Consequently, the relevant inquiry is: Where did the tortious conduct occur? As the Court discussed above with regard to the Missouri choice of law analysis, in the New York case the relevant conduct is the sales calls made to plaintiffs' doctors. Because that conduct occurred in

plaintiffs' home states, under New York choice-of-law analysis the law of those states should apply.

**B.  Class Certification**

Under Fed. R. Civ. P. 23, a court may certify a class only if it finds that the proposed class satisfies all of the requirements of Rule 23(a) and that class-wide adjudication is appropriate for one of the reasons set forth in Rule 23(b).  See Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).  Here, Plaintiffs rely on Rule 23(b)(3) as the basis for maintaining a class action.

"A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." Id. (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)).  Furthermore, when factual premises are disputed, a court may "probe behind the pleadings [and] formulate some prediction as to how specific issues will play out."  In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008) (citations and internal quotation marks omitted).

Fed. R. Civ. P. 23(a) requires that a class meet the following criteria: 1) "the class is so numerous that joinder of all members is impracticable" (numerosity), 2) "there are questions of law or fact common to the class" (commonality), 3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality), and

4) "the representative parties will fairly and adequately protect the interests of the class" (adequacy).  Fed. R. Civ. P. 23(a)(1)-(4).

Under subparagraph (b)(3) of the same Rule, litigation may proceed as a class action if the four criteria of subparagraph (a) are satisfied <u>and</u>

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

A district court's inquiry into the merits of a case at the class certification stage should be conducted only "to the extent that the merits overlap the Rule 23 criteria." <u>In re Boston Scientific Corp. Sec. Litig.</u>, 604 F. Supp. 2d 275, 280-81 (D. Mass. 2009) (quoting <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, 522 F.3d at 24).

**C.  Superiority**

As discussed above, to meet the superiority requirement of Rule 23(b)(3) the Court must find that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  In making the superiority determination, the Court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

>   (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>   (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

There are certainly advantages to litigating this claim on a class-wide basis. The individual claim of each class member is likely to be relatively small and limited to reimbursement for prescription costs and/or co-pays. As a result, those claims may be prohibitively expensive to litigate individually. Despite that advantage, however, given the Court's determination that the law of plaintiffs' home states must apply in both the Jaeckal and Palumbo cases, a class action applying the law of many (presumably all 50) states would simply be unmanageable.

The "intricate nature" of certifying a class under the law of multiple states and "the potential for juror confusion has persuaded most courts that it is unwise" to do so. Faherty v. CVS Pharmacy, Inc., 09-CV-12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011). Courts have been particularly unwilling to certify classes under the laws of multiple states in cases involving state consumer-protection laws on the grounds that those laws vary widely state to state and "courts must respect these differences rather than apply one state's law to sales in other states with different rules." In re Bridgestone/Firestone, Inc.,

-11-

288 F.3d 1012, 1018 (7th Cir. 2002). Because the claims in the Jaeckal and Palumbo cases must be "adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." Id. It is also impractical. In fact, this Court has already discussed the varying statute of limitations with respect to consumer fraud laws in the plaintiffs' home states in its motion to dismiss order. It is clear that in this case the inherent difficulties far outweigh the potential benefits of a nationwide class action. As a result, a class action is not the superior method for adjudicating these claims.

Having found that plaintiffs fail to meet the superiority requirement under Fed. R. Civ. P 23(b)(3), the motion for class certification will be denied and the Court declines to address the other Rule 23(a) or (b) requirements.

### III. **Motion to Certify Class by Scott A. Wilcox**

Wilcox claims that Forest violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17209 and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500-17509 by making "fraudulent, false, unlawful and misleading representations that [Celexa] was safe and effective for minor children."

Wilcox's motion requests certification of the following class:

> all individual persons in the State Of California who, for purposes other than resale, purchased, and/or paid

>for Celexa and/or citalopram during the period from July 25, 2003, through the present (the "Class Period") for use by a minor. For purposes of the Class definition, individuals "purchased" citalopram if they paid or made a copayment pursuant to the terms of a health insurance plan for some or all of the purchase price.

Neither party disputes that California law should apply to this action.

### A.   Predominance Under Fed. R. Civ. P. 23(b)(3)

In contrast to the Rule 23(a) prerequisite of commonality, the "predominance" requirement is much more demanding, although it does not require complete uniformity. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).

Forest asserts that class certification is inappropriate because common questions of fact do not predominate. To state a claim under the UCL or FAL plaintiff bears the burden of establishing that the alleged conduct was "likely to deceive" a reasonable consumer. To meet this standard, plaintiff must show that "a significant portion" of "targeted consumers, acting reasonably in the circumstances, could be misled." Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003). Although the representative plaintiff does not need to establish that unnamed class members were "actually deceived", a class action may be denied under the UCL or FAL in cases

>where individual proof would be necessary to determine whether fraudulent representations were actually made to each class member.

Fairbanks v. Farmers New World Life Ins. Co., 197 Cal.App.4th 544, 564 n.25 (Cal.Ct.App. 2011).

In addition to the "likely to deceive" standard, class members must also prove that they are entitled to restitution of loss of money or property which "may have been acquired" by means of the deceptive conduct. Relief is available "without individualized proof of deception, reliance and injury." In re Tobacco II Cases, 46 Cal. 4th 298, 320 (2009). However, "this does not mean there are no substantive limits on absent class member[s] seeking restitution under these statutes." In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig., 3:09-MD-02100-DRH, 2012 WL 865041 (S.D. Ill. Mar. 13, 2012), at *22 (denying certification of a class under UCL and FAL). In order to meet the "may have been acquired" standard, plaintiffs must still have been exposed to the allegedly fraudulent business practices. Id. As a result,

> even though recovery is available without individualized proof of deception, reliance, or injury, at minimum, putative class members must establish exposure to the allegedly fraudulent conduct.

Id.

In other words, California law "does not allow a consumer who was never exposed to an alleged false or misleading advertising" campaign to recover damages. Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 596 (9th Cir. 2012). In this case, individual, plaintiff-specific inquiries would need to be

-14-

.
.

made to satisfy the exposure requirement under both the "likely to deceive" and "may have been acquired" prongs.  Plaintiff is required to show that each of the physicians who prescribed Celexa to members of the putative class was actually exposed to the allegedly false statements made by Forest's sales representatives.  It is not sufficient simply to presume all doctors who prescribed Celexa were recipients of those misrepresentations.  At best plaintiff can show records indicating that 6,000 sales calls were made by Forest sales representatives to doctors in California regarding Celexa. Plaintiff has not, however, indicated how many of those calls actually related to promoting off label pediatric use. Furthermore, individual questions will remain as to whether each doctor relied on those misrepresentations when deciding to prescribe Celexa.

> when the class action is based on alleged misrepresentations . . . [denial of class certification is appropriate] when individual evidence will be required to determine whether the representations at issue were actually made to each member of the class.

As a California Appellate Court has held:

Davis-Miller v. Auto. Club of S. California, 201 Cal. App. 4th 106, 121 (2011)(collecting cases).  Because the UCL and FAL claims require individual, plaintiff-specific determinations, those claims are not subject to common proof.  As a result, common issues do not predominate and the Court will deny

certification of the class under Rule 23(b).

Having found that the proposed class cannot satisfy Rule 23(b), the Court declines to address the Rule 23(a) factors.

### ORDER

In accordance with the foregoing,

1) The Jaeckal/Palumbo plaintiffs' motion for class certification (Docket No. 109) is **DENIED,** and

2) The Wilcox motion for class certification (Docket No. 111) is **DENIED.**

**So ordered.**

                                      /s/ Nathaniel M. Gorton
                                      Nathaniel M. Gorton
                                      United States District Judge

Dated February 5, 2013