**United States District Court**
**District of Massachusetts**

```
───────────────────────────────
                              )
In re:                        )
                              )
CELEXA AND LEXAPRO MARKETING AND )    MDL No.
SALES PRACTICES LITIGATION    )    09-02067-NMG
                              )
                              )
───────────────────────────────
```

<u>MEMORANDUM & ORDER</u>

**GORTON, J.**

This collection of lawsuits arises out of the marketing and sales of two related anti-depressant drugs, Celexa and Lexapro, by defendants Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc. (collectively "Forest").

The motions currently under consideration concern a lawsuit filed by five consumers who paid for Celexa or Lexapro for use by their minor children.  Plaintiffs Angela Jaeckel ("Jaeckel"), Martha and Peter Palumbo ("Palumbo"), Ruth Dunham ("Dunham") and Tanya Shippy ("Shippy") allege that Forest violated the Illinois Consumer Fraud and Deceptive Business Practices Act, the New York Consumer Fraud and Deceptive Business Practices Act and the Missouri Merchandising Practices Act, respectively, by misrepresenting and concealing material information about the drugs' efficacy in treating major depressive disorder in pediatric patients.

This memorandum and order addresses three pending motions: plaintiffs' motion to certify three consumer classes (Docket No. 230), a motion to take judicial notice of a pending class action in Missouri state court filed by "interested party" Natalie Luster ("Luster") (Docket No. 258) and Luster's motion to stay certification of a Missouri consumer class under federal abstention doctrines (Docket No. 286).  For the reasons that follow, Luster's motions will be denied and plaintiffs' motion will be allowed with respect to the proposed Missouri class and denied with respect to the proposed Illinois and New York classes.

## I.   Background

Celexa and Lexapro are closely-related selective serotonin reuptake inhibitor ("SSRI") antidepressants.  Forest obtained the approval of the Food and Drug Administration ("FDA") to market Celexa (citalopram) for adult use in 1998 and to market Lexapro for adult use in 2002.  It later sought to market both drugs for use in treating major depressive disorder in children and adolescents.

### A.   FDA approval process

In order to obtain FDA approval to market those drugs as effective for pediatric and adolescent use, Forest was required to make a sufficient showing to the FDA that the drugs would be more effective than placebos in treating major depressive

disorder in pediatric or adolescent patients.  The FDA typically requires parties to submit at least two "positive" placebo-controlled clinical trials supporting such use.

Drug studies are deemed "positive" if they show statistically significant improvements for patients who are administered a drug rather than a placebo.  In contrast, a "negative" study is one that indicates no statistically significant difference in outcomes between patients who are administered the drug and those who receive a placebo.

Plaintiffs assert that the FDA sets a low bar for approving drugs for a particular use because it does not require a showing of clinically significant improvement over placebo.  Clinical significance examines whether the observed benefit of a drug outweighs the risks associated with the drug when compared to alternative, less risky treatments.  Thus, a drug with dangerous side effects could, in theory, be proven to be statistically superior to a placebo but not clinically superior.

Drug manufacturers submit the results of such trials to the FDA as part of "new drug applications" ("NDAs").  NDAs request that the FDA approve the drug for treatment of a specific condition, which is known as an "indication".  A manufacturer may only market and sell the drug for an approved indication. If it wishes to obtain FDA approval for a new use, it must submit a separate NDA to the FDA for that indication.

-3-

**B.    Attempts to obtain pediatric or adolescent indications**

Forest arranged for researchers to conduct four double-blind, placebo-controlled studies on the efficacy of Celexa and Lexapro in treating pediatric and adolescent depression.  The first two studies, which examined the efficacy of Celexa, were completed in 2001.  Of those studies, the "Wagner Study" produced "positive" results whereas the "Lundbeck Study" produced "negative" results.  Plaintiffs claim that Forest fraudulently "doctored" the data of the Wagner Study to make the results appear positive and also suggest that flaws in the study design may have made patients aware of whether they were receiving treatment or a placebo.

Forest submitted the results of the two Celexa studies to the FDA in a supplemental NDA in 2002.  The FDA denied Forest's application for a "pediatric indication" for Celexa after finding that the Lundbeck Study was a clearly negative study.

Two studies of Lexapro's efficacy produced similar results to the earlier Celexa studies.  The "Wagner II Study", which was completed in 2004, produced negative results, whereas the "Emslie Study" was positive.  Plaintiffs contend that there are several problems with the design of the Emslie Study that cast doubts upon its results.

In 2008, Forest submitted the results of those studies and the earlier Celexa studies to the FDA in a supplemental NDA.

-4-

Based on 1) the fact that the Wagner Study and the Emslie Study were both positive for efficacy in adolescents and 2) the chemical similarities between Celexa and Lexapro, the FDA in 2009 permitted Forest to market Lexapro as safe and effective in treating major depressive disorder in adolescents.  Forest never obtained FDA approval to market Celexa for such use.

### C.   Alleged misrepresentations by Forest

Plaintiffs allege that Forest engaged in a comprehensive program to mislead consumers and healthcare professionals into believing that Celexa and Lexapro were <u>clinically</u> effective in treating major depressive disorder in children.  The crux of their theory is that Forest deprived consumers of the ability to make an informed decision about whether to purchase or prescribe Celexa or Lexapro for their children by withholding information about the negative efficacy studies and engaging in an aggressive marketing campaign designed to mislead consumers and physicians about the efficacy of Celexa.

#### 1.   Drug labeling

When the FDA approved Celexa for adult use in 1998, the FDA-approved drug label stated that "safety and effectiveness in pediatric patients have not been established."  Lexapro bore an identical label when it was approved for adult use in 2002. Forest did not update either label after receiving the inconclusive results of the Celexa studies in 2001 or upon

learning that the FDA had rejected its request for a pediatric
indication for Celexa in 2002.  It only updated the Celexa label
in 2005 when the FDA began to require manufacturers to include
warnings about increased risk of suicide in pediatric patients.
The updated label stated:

> Safety and effectiveness in the pediatric population
> have not been established (see BOX WARNING and
> WARNINGS—Clinical Worsening and Suicide Risk).  Two
> placebo-controlled trials in 407 pediatric patients
> with MDD have been conducted with Celexa, and the data
> were not sufficient to support a claim for use in
> pediatric patients.  Anyone considering the use of
> Celexa in a child or adolescent must balance the
> potential risks with the clinical need.

Thus, plaintiffs believe that the labeling of Celexa between
2001 and 2005 was misleading and materially deficient because it
omitted information that was available to Forest about whether
Celexa was effective in treating pediatric depression.  They
also contend that Forest should have included such information
on Lexapro's label because it had consistently represented that
Lexapro was nearly identical to Celexa.

### 2.   Marketing

Plaintiffs also allege that Forest developed a company-wide
marketing plan designed to mislead consumers and their
healthcare providers into thinking that Celexa and Lexapro were
effective.  For instance, they posit that Forest did not
disclose the results of the negative Lundbeck Study beyond a
small group of senior executives and aggressively promoted the

-6-

Wagner Study as a positive study despite alleged flaws in study
design.  Plaintiffs also allege that Forest paid physicians to
speak about the benefits of Celexa and Lexapro at conferences
and gave others lavish gifts to induce them to prescribe the
drugs for pediatric use.  The Court has described plaintiffs'
allegations with respect to Forest's marketing at length in a
previous Memorandum and Order (Docket No. 58).

###### D.   Procedural history

In 2009, Jaeckel filed her complaint in the United States
District Court for the Eastern District of Missouri (Civil
Action No. 09-11518) and the Palumbos filed their complaint in
the United States District Court for the Southern District of
New York (Civil Action No. 09-11532).  The cases were
transferred to this Court for consolidated pretrial proceedings.
The Court denied Forest's motion to dismiss those complaints in
November, 2010 (Docket No. 58).

In September, 2012, the plaintiffs in the Jaeckel and
Palumbo actions moved to certify two national consumer classes
of individuals and entities who purchased, reimbursed or paid
for Celexa or Lexapro for use by a minor (Docket 109).  Another
plaintiff, Scott Wilcox, moved separately to certify a class
consisting of individuals in the state of California (Docket No.
111).  The Court denied both motions in February, 2013 (Docket
No. 174).

The plaintiffs filed a second amended complaint in April, 2013 that added Dunham and Shippy as named plaintiffs (Docket No. 217) and have since moved to certify three classes of Missouri, New York and Illinois consumers (Docket No. 230). The Court heard oral argument on the motion for class certification on September 20, 2013, and took the matter under advisement.

Natalie Luster, a named plaintiff in an ongoing class action in a Missouri state court, has filed a motion for the Court to take judicial notice of the overlapping state class action in Missouri (Docket No. 258) and a motion to stay proceedings in this Court on the motion to certify a Missouri consumer class on federal abstention grounds (Docket No. 286). Luster has entered an appearance in this case as an "interested party" but has not moved to intervene under Fed. R. Civ. P. 24.

## II. Luster's motions to stay and to take judicial notice

As an initial matter, the Court is not convinced that Luster has standing to file motions at this stage of the litigation without first moving to intervene. See Smith v. Bayer Corp., 131 S. Ct. 2368, 2379 (2011) (citing Devlin v. Scardelletti, 536 U.S. 1, 16 n.1 (2005) (Scalia, J., dissenting)) (explaining that it would be "surely erroneous" to assert that a non-named class member is a party to a class-action litigation before a class is certified).

-8-

In any event, both motions are meritless.  The Court is aware of the similar class action pending in the Missouri Circuit Court and a stay is unwarranted.  As a general matter, this Court is disinclined to stay the case when both plaintiffs and defendants oppose Luster's motion to abstain and seek to continue to litigate in this forum.  Moreover, it is not persuaded by Luster's abstention arguments.

First, Luster cannot satisfy the threshold criterion for Colorado River abstention because the proposed federal class action is not sufficiently parallel to Luster's state class action. See Puzey v. BJ's Wholesale Club, Inc., No. 11-11339-MLW, 2012 WL 1114164, at *3 (D. Mass. Mar. 31, 2012) ("In determining whether Colorado River abstention is appropriate, a threshold issue is whether the state litigation is parallel to the federal case.").  For instance, the class certified by the Missouri court includes only purchasers of Celexa while the proposed federal class would include purchasers of both Celexa and Lexapro.

Similarly, Thibodaux abstention is inappropriate in this case.  The plaintiffs' claims under the Missouri Merchandising Practices Act (MMPA) do not raise novel issues of state law that implicate an "important state prerogative" such as eminent domain or water rights. See Coors Brewing v. Mendez-Torres, 678 F.3d 15, 23 (1st Cir. 2012) (citing La. Power & Light Co. v.

-9-

City of Thibodaux, 360 U.S. 25 (1959)).  Furthermore, Luster
provides no concrete examples to support her claim that this
Court must construe "novel areas of Missouri substantive law" if
it certifies the class proposed by plaintiffs and allows the
case to go forward.

Finally, Pullman abstention is unwarranted.  Pullman
abstention is appropriate when substantial uncertainty exists as
to the meaning of a state law and settling that question may
obviate the need for the federal court to decide a significant
federal constitutional question. Batterman v. Leahy, 544 F.3d
370, 373 (1st Cir. 2001).  The only potential federal
constitutional issue in this case is whether it is
constitutional to award punitive damages under the MMPA.  There
is no question that the MMPA permits plaintiffs to obtain
punitive damages, see Mo. Rev. Stat. § 407.025.1; Heckadon v.
CFS Enters., Inc., 400 S.W.3d 372, 381-86 (Mo. Ct. App. 2013),
and there is thus no need to abstain to allow state courts to
resolve an ambiguity.

## III. **Plaintiffs' motion to certify classes**

Plaintiffs have moved to certify three consumer classes
based on purchases or prescriptions of Celexa and Lexapro made
in Missouri, Illinois and New York, respectively.  Each proposed
class is defined as follows:

All consumers and entities (other than governmental
entities) who paid for Celexa or Lexapro prescribed or
purchased in the State of [Illinois/Missouri/New York]
for use by a minor between July 2001 (for Celexa) and
August 2002 (for Lexapro) through the present. This
class does not include those individuals who are
seeking personal injury claims arising out of their
purchase of Celexa and/or Lexapro.

## A.    Legal Standard

Under Fed. R. Civ. P. 23, a court may certify a class only
if it finds that the proposed class satisfies all of the
requirements of Rule 23(a) and class-wide adjudication is
appropriate for one of the reasons set forth in Rule 23(b). See
Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir.
2003).

Rule 23(a) requires that a class meet the following
criteria: 1) "the class is so numerous that joinder of all
members would be impracticable" (numerosity), 2) "there are
questions of law or fact common to the class" (commonality), 3)
"the claims or defenses of the representative parties are
typical of the claims or defenses of the class" (typicality) and
4) "the representative parties will fairly and adequately
protect the interests of the class" (adequacy). Fed. R. Civ. P.
23(a)(1)-(4).

Plaintiffs maintain that those requirements are met and,
further, that a class action is appropriate under Rule 23(b)(3).
That rule provides that litigation may proceed as a class action

only if 1) common questions of law or fact "predominate" over questions affecting only individual members of the class and 2) a class action is a "superior" method for fairly and efficiently resolving the case as compared to other available methods. Fed. R. Civ. P. 23(b)(3). The "predominance" requirement is more demanding than "commonality" under Rule 23(a) but does not require complete uniformity. See Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997). It tests whether proposed classes are "sufficiently cohesive" to warrant proceeding as a class action. Id. at 623.

**B.    Application**

**1.    Rule 23(a) Prerequisites**

Forest does not seriously challenge plaintiffs' argument that the proposed classes satisfy the Rule 23(a) criteria. The Court will, therefore, only briefly explain its reasons for finding that they do so.

**a.    Numerosity**

First, the Court assumes that the prospective classes would be sufficiently numerous. Plaintiffs do not provide the Court with an exact number of consumers who purchased or paid for Celexa or Lexapro for pediatric or adolescent use within Missouri, Illinois and New York between approximately 2001 and the present. Nevertheless, the Court concludes based on the size of the market for antidepressants and Forest's significant

-12-

share of that market that the proposed classes will number in
the thousands.  See McCuin v. Sec'y of Health & Human Servs., 817
F.2d 161, 167 (1st Cir. 1987) (explaining that district courts
may draw reasonable inferences from available facts in assessing
whether numerosity is satisfied).

### b.   Commonality

To meet the commonality requirement, plaintiffs need only
demonstrate that there are common questions of fact or law in
the case.  That requirement is a "low hurdle" that can be met
with even a single common legal or factual issue. Swack v.
Credit Suisse First Boston, 230 F.R.D. 250, 259 (D. Mass. 2005)
(citations omitted).  Plaintiffs have satisfied that requirement
because their claims turn on several common questions of fact
and law including whether Forest crafted misleading drug labels
that misrepresented the efficacy of Celexa and Lexapro.

### c.   Typicality

The typicality requirement is satisfied when the
plaintiffs' claims arise from the same course of conduct and are
based on the same legal theory as the class claims. Swack, 230
F.R.D. at 260.  That criterion is satisfied here.  Plaintiffs
claim that they sustained an economic injury by purchasing a
drug without sufficient information about its efficacy.  They
seek to certify classes of consumers who they claim were also
harmed by the lack of efficacy information.

-13-

### d.   Adequacy

The adequacy requirement is met where 1) "the interests of the representative party will not conflict with the interests of the class members" and 2) "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." In re Sonus Networks, Inc. Sec. Litig., 247 F.R.D. 244, 249 (D. Mass. 2007) (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985)).

The Court finds that this requirement is met.  The named plaintiffs and their attorneys have represented the interests of the prospective classes diligently and there is no reason to think they will not continue to do so.

### 2.   Rule 23(b)(3) requirements

The central issue is, therefore, whether the proposed classes satisfy the requirements of Rule 23(b)(3).  The Court finds that class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), because the claim of each class member is likely to be very small and limited to reimbursement for some portion of the prescription cost, which in most cases will be a co-pay of $10 or $20 per refill.  It is not as clear, however, if common issues predominate over issues requiring individualized proof as Rule 23(b)(3) also requires.

Forest argues that plaintiffs cannot satisfy the predominance requirement for any of the proposed classes because individualized questions of fact would overwhelm any common issues.  It anticipates that two individualized inquiries of fact that are likely to predominate are 1) whether class members or their prescribing physicians were exposed to and deceived by the alleged misrepresentation and 2) whether class members suffered any injury because the antidepressant they purchased was no more effective than a placebo.

Plaintiffs respond that they do not need to prove exposure on an individual basis because class exposure is implied when misrepresentations pertain to a "fundamental aspect of the product."  Here, plaintiffs allege that a drug's efficacy is the primary determinant of whether a patient will purchase and a doctor will prescribe the drug.  As a result, they argue, every class member was exposed to deceptive conduct merely by purchasing or prescribing the drug.

Plaintiffs similarly contend that there is no need for individualized determinations of whether the drug purchased by each class member was effective in treating his or her child's depression.  Instead, they contend that every class member was harmed by being denied the opportunity to make an informed choice about whether to purchase Celexa or Lexapro.  They suggest that a fact-finder could award either full refunds or

-15-

base damages on how much less a consumer with the proper
information would have paid for the drug than a consumer with
the information provided by Forest.

Plaintiffs' "informed choice" theory presents a novel claim
for relief.  The First Circuit Court of Appeals has held that
district courts must conduct a "searching" inquiry when the
proposed class action posits a "novel or complex theory" of
injury. In re New Motor Vehicles Canadian Export Antitrust
Litig., 522 F.3d 6, 25-26 (1st Cir. 2008).  The Court must
therefore assess whether plaintiffs' "informed choice" theory is
viable and whether the necessary facts exist for the theory to
succeed. Id. at 26.  Whether the theory is persuasive, however,
is an issue for the fact-finder. Id. at 29.

The Court will therefore consider 1) whether Missouri,
Illinois and New York recognize plaintiffs' informed choice
theory and 2) if so, whether common issues will predominate over
individualized inquiries.

### a.  Missouri

The Missouri plaintiffs allege that Forest violated the
Missouri Merchandising Practices Act (MMPA), which prohibits

> deception, fraud, false pretense, false promise,
> misrepresentation, unfair practice or the concealment,
> suppression, or omission of any material fact in
> connection with the sale or advertisement of any
> merchandise in trade or commerce.

Plubell v. Merck & Co., Inc., 289 S.W.3d 707, 711 (Mo. Ct. App. 2009) (citing Mo. Rev. Stat. § 407.020.1).

The Missouri plaintiffs must show that they suffered an "ascertainable" loss of money or property in order to recover under the MMPA. Id. at 715 (citing Mo. Rev. Stat. § 407.025). They need not, however, show that they or their physicians relied on Forest's alleged misrepresentations about Celexa or Lexapro in deciding to purchase or prescribe those drugs. Id. at 714.  Furthermore, the MMPA does not require an individualized showing that Forest's alleged misrepresentations caused consumers to purchase Celexa or Lexapro, although they will have to show that their loss resulted from Forest's conduct. Id. Because reliance and causation are not elements of a claim under the MMPA, there will be no need for individualized findings in either respect and common issues will therefore predominate.

Plaintiffs' "informed choice" theory of damages is also viable under Missouri law. See In re New Motor Vehicles, 522 F.3d at 25-26.  The case is similar to Plubell, which involved the concealment of studies that showed that the prescription drug Vioxx increased user risk of heart attack and stroke. 289 S.W.3d at 710-11, 715 (explaining that plaintiffs can prove damages by showing the difference between the value of Vioxx as represented by Merck and the actual value if Merck had disclosed the safety risks).  The Court is not persuaded by Forest's

-17-

attempt to distinguish Plubell on the basis that Vioxx was inherently unsafe whereas Celexa and Lexapro were not necessarily ineffective.  Under plaintiffs' theory, parents are harmed by their inability to make an informed choice regardless of whether the drugs helped their children.

The Court will therefore allow plaintiffs' motion to certify the Missouri class.

### b.   Illinois

The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFDBPA) prohibits

> unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission....

815 Ill. Comp. Stat. Ann. 505/2.  To prevail on their claim, plaintiffs must show that 1) Forest engaged in a deceptive act or practice, 2) Forest intended that class members rely on the deception, 3) the deception occurred in a course of conduct involving trade or commerce, and 4) plaintiffs suffered actual damage as a result of the deception. De Bouse v. Bayer, 922 N.E.2d 309, 313 (Ill. 2009).

The ICFDBPA requires a showing that plaintiffs' injury was proximately caused by Forest's alleged deception but it does not require plaintiffs to show reliance. Connick v. Suzuki Motor

-18-

Co., 675 N.E.2d 584, 593 (Ill. 1996).  The Supreme Court of
Illinois has held that plaintiffs must actually be deceived by a
statement or omission that is made by the defendant in order to
recover. De Bouse, 922 N.E.2d at 316.  It has rejected the
argument that plaintiffs who are not exposed to deceptive
communications or advertisements may recover merely because the
defendant was able to charge a higher price as a result of the
misrepresentations. See Oliveira v. Amoco Oil Co., 776 N.E.2d
151, 163-65 (Ill. 2002).

Forest maintains that plaintiffs will therefore be unable
to submit common proof of causation because the court will need
to conduct individual inquiries into whether each class member
was actually deceived by the advertising.  It notes, for
instance, that the doctors who treated the Illinois plaintiff's
child do not claim to have been deceived by Forest's marketing
of Lexapro.  The doctors have also testified that they believed
the drug was effective in treating the child's depression.

Plaintiffs respond that their claims do not require
individualized proof of causation.  They suggest that anyone who
purchases or pays for a prescription drug necessarily assumes or
believes that it will be effective to treat the condition for
which it was prescribed.  That assumption or belief, in turn, is
necessarily shaped by the drug label and the manufacturer's
marketing strategy. In essence, plaintiffs suggest that

causation may be presumed when a drug manufacturer unlawfully withholds facts about efficacy because such information is inherently material to a consumer's decision to purchase a drug.

Plaintiffs adduce no case law, however, to support such a presumption.  Furthermore, the Supreme Court of Illinois has regularly rejected what it calls the "market theory" of causation in cases in which plaintiffs claimed that they paid more as a result of deceptive conduct even if they were not actually exposed to or deceived by the conduct. See De Bouse, 922 N.E.2d at 316 ("[W]e have consistently rejected the market theory of causation...."); Oliveira, 776 N.E.2d at 163-64. Plaintiffs' informed choice theory is ultimately a version of that market theory of causation as it would allow a class member to recover even if she never read the drug label and even if her doctor believed Celexa or Lexapro to be effective for treating pediatric depression for reasons unrelated to Forest's misrepresentations.

Because plaintiffs' informed choice theory is not viable under Illinois law, their claims would necessarily involve individualized inquiries into whether or not a class member's purchase was caused by actual deception.  As a result, the proposed Illinois class fails to satisfy the predominance requirement of Fed. R. Civ. P. 23(b)(3).

### c.  New York

The New York CFDBPA prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349(a).  To prevail on their claims against Forest, the Palumbo plaintiffs must show that they suffered actual, although not necessarily pecuniary, harm as a result of Forest's deceptive or misleading acts or practices. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 745 (N.Y. 1995).  Thus, plaintiffs must show that the deceptive act caused their harm but need not show that they relied on any representation by Forest. See id.

Plaintiffs' "informed choice" theory cannot proceed under New York law because New York courts have soundly rejected such theories.  For example, in Small v. Lorillard Tobacco Co., Inc., the Court of Appeals of New York reasoned as follows:

> According to plaintiffs, addiction is not the injury;
> rather, plaintiffs assert that defendants' deception
> prevented them from making free and informed choices
> as consumers.  Plaintiffs add that had they known that
> nicotine was addictive, they never would have
> purchased cigarettes.
>
> ...
>
> Plaintiffs' definition of injury is legally flawed.
> Their theory contains no manifestation of either
> pecuniary or "actual" harm; plaintiffs do not allege
> that the cost of cigarettes was affected by the
> alleged misrepresentation, nor do they seek recovery
> for injury to their health as a result of their
> ensuing addiction....  Plaintiffs' cause of action
> under this statute, as redefined by the trial court

-21-

and as embraced by them, thus sets forth deception as both act and injury.

720 N.E.2d 892, 898 (N.Y. 1999); see also Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004) ("[T]he claimed deception cannot itself be the only injury.").

Thus, to prevail, plaintiffs will be limited to arguing that they purchased a product that Forest misrepresented as effective but that was not, in fact, effective.  Forest correctly maintains that individualized inquiries would predominate over common issues because there would be a question of whether or not Celexa or Lexapro actually helped each class member's minor child.  As a result, the Court will deny plaintiffs' motion to certify a New York consumer class.

## ORDER

In accordance with the foregoing,

1) Luster's motion to take judicial notice (Docket No. 258) is **DENIED;**

2) Luster's motion to stay (Docket No. 286) is **DENIED;** and

3) Plaintiffs' motion for class certification (Docket No. 230) is, with respect to the proposed Missouri consumer class, **ALLOWED**, but is, with respect to the proposed Illinois and New York consumer classes, **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 10, 2014