```
_____
                              )
In re:                        )
                              )     MDL No.
CELEXA AND LEXAPRO MARKETING AND )  09-2067-NMG
SALES PRACTICES LITIGATION    )
_____ )
                              )
PAINTERS AND ALLIED TRADES    )
DISTRICT COUNCIL 82 HEALTH CARE )
FUND,                         )
        Plaintiff,            )
                              )
        v.                    )     Civil Action No.
                              )     13-13113-NMG
FOREST LABORATORIES, INC. and )
FOREST PHARMACEUTICALS, INC., )
                              )
        Defendants.           )
_____ )
                              )
ALLIED SERVICES DIVISION WELFARE )
FUND and NEW MEXICO UFCW UNION'S )
AND EMPLOYER'S HEALTH AND      )
WELFARE TRUST FUND             )
                              )
        Plaintiffs,           )
                              )     Civil Action No.
        v.                    )     14-10784-NMG
                              )
FOREST LABORATORIES, INC. and )
FOREST PHARMACEUTICALS, INC., )
                              )
        Defendants.           )
_____ )
```

## MEMORANDUM & ORDER

GORTON, J.

These two cases arise out of the marketing and sales of the
related anti-depressant drugs Celexa and Lexapro by defendants

Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc. ("defendants" or, collectively, "Forest"). Plaintiff Painters and Allied Trades District Council 82 Health Care Fund ("Painters") and plaintiffs Allied Services Division Welfare Fund and New Mexico UFCW Union's and Employers' Health and Welfare Trust Fund ("Allied Services/NM UFCW") are health and benefit funds providing benefits to covered members and their families. They act as third-party payors ("TPPs") that reimburse medical expenses of plan members.

Painters alleges that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Minnesota Consumer Fraud Act, Minnesota Unfair Trade Practices Act and Minnesota Deceptive Trade Practices Act by misrepresenting and concealing material information about the efficacy of Celexa and Lexapro in treating major depressive disorder ("MDD") in pediatric patients. Allied Services/NM UFCW allege that defendants violated RICO, Illinois and New Mexico consumer protection statutes, the consumer fraud laws of 46 other states and was unjustly enriched.

Pending before the Court are defendants' motions to dismiss the Painters first amended complaint ("FAC") and the Allied Services/NM UFCW complaint.

## I.  **Background**

Celexa and Lexapro are closely-related selective serotonin reuptake inhibitor antidepressants.  Forest obtained the approval of the Food and Drug Administration ("FDA") to market Celexa (citalopram) for adult use in 1998 and to market Lexapro for adult use in 2002.  It later sought to market both drugs for use in treating MDD in children and adolescents.

### A.  **FDA approval process**

In order to obtain FDA approval to market Celexa and Lexapro as effective for pediatric and adolescent use, Forest was required to make a sufficient showing to the FDA that the drugs would be more effective than placebos in treating MDD in pediatric or adolescent patients.  The FDA typically requires parties to submit at least two "positive" placebo-controlled clinical trials supporting such use.

Drug studies are deemed "positive" if they show statistically significant improvements for patients who are administered a drug rather than a placebo.  In contrast, a "negative" study is one that indicates no statistically significant difference in outcomes between patients who are administered the drug and those who receive a placebo.

Drug manufacturers submit the results of such trials to the FDA as part of "new drug applications" ("NDAs").  Through an NDA, a manufacturer may also request FDA approval of use of the

drug to treat a specific condition which is known as an
"indication."  A manufacturer may only market and sell the drug
for an approved indication.

**B.  Clinical studies and FDA approval of an adolescent
     indication for Lexapro**

Forest arranged for researchers to conduct four double-
blind, placebo-controlled studies on the efficacy of Celexa and
Lexapro in treating pediatric and adolescent depression.  The
first two studies, which examined the efficacy of Celexa, were
completed in 2001.  Of those studies, Celexa Study 18 ("MD-18")
produced positive results whereas Celexa Study 94404 ("Lundbeck
Study") produced negative results.

Forest submitted the results of the two Celexa studies to
the FDA in a supplemental NDA in 2002.  The FDA denied Forest's
application for a pediatric indication for Celexa after finding
that the Lundbeck Study was a clearly negative study.

Two studies of Lexapro's efficacy produced similar results
to the earlier Celexa studies.  Lexapro Study 15, which was
completed in 2004, produced negative results, whereas Lexapro
Study 32 was positive.

Celexa's FDA-approved label was revised in February, 2005
to include a description of MD-18 and the Lundbeck Study.
Lexapro's FDA-approved label was revised at the same time to
describe Lexapro's negative pediatric study.  Both labels added

an explicit statement that data were not sufficient at that time to support an indication for use in pediatric patients.

In 2008, Forest submitted the results of those studies and the earlier Celexa studies to the FDA in a supplemental NDA. Based on 1) the fact that Celexa Study 18 and Lexapro Study 32 were both positive for efficacy in adolescents and 2) the chemical similarities between Celexa and Lexapro, the FDA permitted Forest to revise its Lexapro label in March, 2009 and market Lexapro as safe and effective in treating MDD in adolescents. Forest never obtained FDA approval to market Celexa for such use.

### C. United States' <u>qui tam</u> complaint

In February, 2009, the United States Department of Justice unsealed its qui tam complaint against Forest ("the government's qui tam complaint") alleging off-label pediatric promotion and concealment of the Lundbeck Study.

Following the unsealing of the government's qui tam complaint, two national class actions were filed: 1) <u>New Mexico UFCW Union's and Employers' Health and Welfare Trust Fund</u> v. <u>Forest Labs, Inc.</u>, No. 09-cv-11524-NMG (filed Mar. 13, 2009) ("March, 2009 RICO complaint"), which alleged causes of action under civil RICO and various state consumer protection statutes on behalf of a putative class of TPPs and 2) <u>Jaeckel, et al.</u> v. <u>Forest Pharm., Inc., et al.</u>, No. 09-cv-11518-NMG (filed Mar. 20,

2009) ("Jaeckel complaint"), which asserted consumer claims for fraudulent concealment and misrepresentation, among others.

### D. Procedural history

#### 1. Painters action

In November, 2013, plaintiff Painters filed a complaint on behalf of a putative nationwide TPP class.  It filed a first amended complaint in February, 2014, asserting violations of RICO (Counts I and II) and three Minnesota consumer protection statutes (Counts III, IV and V) on behalf of a class of TPPs and consumers.

#### 2. Allied Services/NM UFCW action

NM UFCW filed a complaint in this MDL in March, 2009, asserting RICO, consumer fraud and unjust enrichment claims on behalf of a nationwide class of TPPs.  Allied Services joined as a plaintiff later that month.  Allied Services/NM UFCW voluntarily dismissed the complaint in June, 2010.

In March, 2014, Allied Services/NM UFCW filed a new complaint on behalf of a putative nationwide class for alleged claims for violations of RICO (Counts I and II), Illinois and New Mexico consumer protection statutes (Counts III and IV), the consumer fraud laws of 46 other states (Count V) and unjust enrichment (Count VI).

Defendants moved to dismiss both actions in April, 2014. After extensive briefing was completed in each case, the Court held a joint hearing on the motions to dismiss in October, 2014.

## II. **Defendants' motions to dismiss Painters' first amended complaint**

Plaintiff Painters alleges that defendants misrepresented and concealed material information about the efficacy of Lexapro in treating major depressive disorder ("MDD") in pediatric patients. Their complaint asserts claims under civil RICO, Minnesota Consumer Fraud Act ("MCFA"), Minnesota Unfair Trade Practices Act ("MUTPA") and Minnesota Deceptive Trade Practices Act ("MDTPA"). Forest moved to dismiss the FAC on the grounds that plaintiff's claims are barred by 1) the statute of limitations and 2) failure to plead requisite elements of the respective statutes.

### A. **Legal standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). The Court, however, need not accept legal conclusions as true. Ashcroft v.

-7-

_Iqbal_, 129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. _Id._  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. _Id._ at 1950.

### B.   Statute of limitations

Defendants contend that all of plaintiff's claims are time-barred by the statute of limitations ("SOL").

#### 1.   RICO claims

##### a.   Accrual date

The SOL for civil RICO claims is four years after the plaintiff discovers or should have discovered the injury. _See Rotella_ v. _Wood_, 528 U.S. 549, 552-55 (2000).  The accrual of the limitations period is computed from "the point of injury or its reasonable discovery" and not from the "reasonable discovery of a pattern [of racketeering activity]." _Id._ at 558; _Lares Grp., II_ v. _Tobin_, 221 F.3d 41, 43 (1st Cir. 2000).

Here, the parties dispute the nature of the plaintiff's injury.  Forest contends that the alleged injury is the payment for ineffective off-label uses of the subject drugs and that it was readily discoverable by early 2005, after a few articles published in _The New York Times_ discussed the negative result of the Lundbeck Study and after Forest revised both the Celexa and

-8-

Lexapro labels to describe the Lundbeck Study and the negative Lexapro study. Plaintiff, on the other hand, contends that its injury is the payment for the drugs due to defendants' fraudulent conduct and that it did not discover such fraud until October, 2013.

Even under the definition of the injury as alleged by the defendants, the Court declines to find, as a matter of law at this stage of the litigation, that plaintiff should have discovered its injury in 2005. It recognizes, however, that Painters, unlike an ordinary consumer, is a sophisticated TPP with a fiduciary duty to its beneficiaries to monitor the prescriptions for which it reimburses its insureds. Although the Court believes that the plaintiff was likely aware of the labeling changes and therefore should have discovered it was paying for potentially ineffective drugs as of 2005, defendants have failed to cite any authority stating that TPPs should be aware of all labeling changes for each of the products for which their insureds are entitled to reimbursement.

Given that the running of the SOL is usually a jury question, In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 183 (D. Mass. 2003), the Court will leave the determination of whether plaintiff should have discovered its injury as of 2005 to the finder of fact. See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 2009 WL

2043604, at *22 (D.N.J. July 10, 2009) (finding it was "not at all clear" that an FDA warning letter, public filings and newspaper articles reporting a government investigation of off-label marketing of the subject drugs provided sufficient warnings to trigger the SOL at the motion to dismiss stage).

The Court concludes, instead, that the undisputed facts support a finding that the SOL for plaintiff's RICO claims accrued no later than March, 2009, when the national RICO class action was filed following the unsealing of the government's qui tam complaint against Forest alleging off-label pediatric promotion and concealment of the Lundbeck Study. See In re Zyprexa Products Liab. Litig., 253 F.R.D. 69, 195-96 (E.D.N.Y 2008), rev'd on other grounds sub nom. UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121 (2d Cir. 2010) (barring RICO claims beyond date of initial TPP lawsuit because "by then all potential [TPPs]....should have been sufficiently advised of alleged [injury]"); see also Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 403 (3d Cir. 2006) (dismissing fraud claims as time-barred where complaint "closely track[ed]" factual basis of a previously filed complaint).  Painters filed its initial complaint in November, 2013, more than four years after March, 2009.

### b. Tolling of the SOL

Plaintiff nevertheless contends that its action was timely because the filing of the <u>Jaeckel</u> consumer class action complaint and the March, 2009 RICO complaint tolled the SOL under <u>American Pipe</u>, which held that

> the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

<u>American Pipe & Construction Co.</u> v. <u>Utah</u>, 414 U.S. 538, 554 (1974); <u>see also</u> <u>Crown, Cork & Seal Co., Inc.</u> v. <u>Parker</u>, 462 U.S. 345, 351 (1983) (expanding the doctrine to putative class members). Once the SOL has been tolled, it remains tolled for all members of the putative class until class certification is denied. <u>Crown, Cork & Seal</u>, 462 U.S. at 354.

### i. Tolling as a result of the <u>Jaeckel</u> complaint

Plaintiff asserts that even though the <u>Jaeckel</u> complaint did not allege a RICO cause of action, it tolled the SOL for the Painters' action until the Court denied class certification in <u>Jaeckel</u> in February, 2013. Relying on cases that cite Justice Powell's concurring opinion in <u>Crown, Cork & Seal</u>, 462 U.S. at 355, plaintiff contends that <u>American Pipe</u> tolling applies as long as the claims "share a common factual basis and legal nexus so that the defendant would rely on the same evidence...in his

-11-

defense." <u>In re Enron Corp. Sec.</u>, 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006).

Defendants respond that the <u>Jaeckel</u> complaint could not toll the plaintiff's RICO claims because the Missouri consumer protection claims asserted in <u>Jaeckel</u> are not the same as the federal RICO claims asserted in the Painters' FAC. They contend that <u>American Pipe</u> tolling applies "only for claims that are identical to the claims asserted in the putative class action complaint." <u>Shriners Hospitals for Children</u> v. <u>Qwest Commc'ns Int'l Inc.</u>, 2007 WL 2801494, at *3 (D. Colo. Sept. 24, 2007).

There remains a split of authority on the issue of whether <u>American Pipe</u> tolling is available for subsequent, non-identical claims arising from the same factual basis. <u>Compare In re Neurontin Mktg. & Sales Practices Litig.</u>, 2011 WL 3852254, *48 (D. Mass. Aug. 31, 2011) <u>aff'd,</u> 712 F.3d 21 (1st Cir. 2013) (finding <u>American Pipe</u> "inapplicable and the statute of limitations was not tolled" for a claim made under the California Unfair Competition Law because the initial class complaint did not make such a claim) <u>and In re Copper Antitrust Litig.</u>, 436 F.3d 793-97 (7th Cir. 2006) (refusing to apply tolling to putative class members' federal antitrust claims where prior class action asserted only state antitrust claims) <u>with</u> <u>Arivella</u> v. <u>Lucent Technologies, Inc.</u>, 623 F. Supp. 2d 164, 180 (D. Mass. 2009) (noting that <u>American Pipe</u> tolling applies

-12-

to claims that are "sufficiently similar to the claims brought by the failed class such that the class action effectively put the defendant on notice of the plaintiff's potential claims") and Cullen v. Margiotta, 811 F.2d 698, 720 (2d Cir. 1987) (applying American Pipe tolling to RICO claims even though they were not asserted in the initial class action in state court because the actions shared the same factual basis).

While the First Circuit Court of Appeals has not directly addressed the issue, this Court is persuaded by the reasoning of Judge Meskill in his concurrence, in part, and dissent, in part, in the Cullen decision:

> The majority opinion unnecessarily, and I believe unwisely, broadens American Pipe. Unlike the setting in American Pipe, the filing of the state action in our case did not notify defendants of the "substantive claims being brought against them" in the district court. Although both actions were based on the same set of facts, the claims themselves asserted separate and distinct grounds for recovery. The [first action] was based on a state law theory of recovery seeking compensatory damages [while the subsequent actions] sought treble damages based on specific federal statutes.

Id. at 734 (emphasis in the original).[1]

---

[1] In In re Neurontin Mktg. & Sales Practices Litig., 712 F.3d 21 (1st Cir. 2013), the First Circuit Court of Appeals affirmed the District Court's opinion, in which Judge Saris refused to apply American Pipe tolling to claims made under California Unfair Competition Law because the initial class complaint did not allege such claims. The First Circuit did not, however, directly address the issue of tolling under American Pipe in its opinion.

Moreover, the Supreme Court has noted that the tolling effect under American Pipe "depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 467 (1975). In Johnson, Justice Blackmun held that the pendency of Title VII proceedings did not toll the SOL for the assertion of an additional claim under 42 U.S.C. even though both claims arose from the same factual circumstances. Id.

Because Jaeckel asserted Missouri consumer protection claims, this Court rejects the applicability of Jaeckel to the tolling of plaintiff's federal RICO claims.

### ii. Tolling as a result of the March, 2009 RICO complaint

Plaintiff argues that the March, 2009 RICO complaint also tolled the SOL for its action because both complaints asserted the same claims. Defendants respond that the complaint has no tolling effect because it was voluntarily dismissed and

> [t]he general rule...is that a voluntarily dismissed complaint does not toll the statute of limitations... because the law treats a voluntarily dismissed complaint as if it never had been filed.

In re IndyMac Mortgage-Backed Sec. Litig., 718 F. Supp. 2d 495, 504 (S.D.N.Y. 2010).

The logic of that rule applies when the same party attempts to use its previously filed cases to toll the SOL but the rule does not address the tolling effect for unnamed class members

-14-

under American Pipe.  Instead, the goal in American Pipe to enable members of a putative class to rely on a pending action for the protection of their interests

> can be achieved only if the way in which the first suit ends—denial of class certification by the judge, abandonment by the plaintiff, or any other fashion—is irrelevant.

Sawyer v. Atlas Heating & Sheet Metal Works, Inc., 642 F.3d 560, 562 (7th Cir. 2011).

The March, 2009 RICO complaint was voluntarily dismissed in June, 2010.  Accordingly, the plaintiff's federal RICO claims (Counts I and II) were timely filed because the March, 2009 RICO complaint tolled the limitations period for the filing of such claims.

### 2.  Minnesota consumer fraud claims

Under state law, actions in which "liability [is] created by statute" have a six-year statute of limitations. Minn. Stat. § 541.05.1(2).  A claim accrues on the date of the fraudulently-induced purchase regardless of when the plaintiff discovers the alleged fraud. Klehr v. A.O. Smith Corp., 875 F. Supp. 1342, 1352-53 (D. Minn. 1995).  Plaintiff's state consumer fraud claims therefore accrued when plaintiff reimbursed its insureds for the fraudulently-induced purchases of Celexa and Lexapro.

Defendants assert that plaintiff's Minnesota consumer fraud claims are time-barred because, in light of publicly disclosed

study results and the label change in 2005, Painters could not have made any fraudulently-induced payments to its insureds for off-label prescriptions of Celexa and Lexapro after 2005.  The Court has, however, already determined that plaintiff was not necessarily on notice of the alleged fraud until the filing of the March, 2009 RICO complaint.

Accordingly, plaintiff's Minnesota consumer fraud claims (Counts III, IV and V) were timely filed, but only with respect to the alleged, fraudulently-induced payments made between November, 2007 (six years prior to the filing of its complaint) and March, 2009.

### C.  Substantive elements of the claims

Having determined that the Painters' claims are not time-barred, the Court proceeds to analyze the plaintiff's substantive arguments.

#### 1.  RICO claims

Plaintiff alleges that defendants violated two sections of civil RICO, 18 U.S.C. § 1962(c) and (d), by employing the Celexa and Lexapro Off-label Deceptive Promotion Enterprise ("Global Enterprise") and its four sub-enterprises to increase off-label pediatric use of Celexa and Lexapro.  A violation of section 1962(c) of the RICO statute requires proof of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496

(1985).  Subsection (d) of the statute makes it unlawful to
conspire to violate subsection (c).

Forest contends that even if the RICO claims were timely
filed, the FAC fails adequately to plead the required elements
of a RICO claim, including 1) standing, 2) a RICO enterprise
whereby purported members share a common purpose and 3)
predicate acts constituting a pattern of racketeering.

### a.   Standing

Defendants claim that the plaintiff does not have standing
because it failed to allege 1) injury to its business or
property and 2) causation of the injury by an alleged violation
of Section 1962.  First Nationwide Bank v. Gelt Funding Corp., 27
F.3d 763, 767 (2d Cir. 1994).  Forest contends that the
plaintiff's injury is purely speculative because the FAC fails
1) to allege facts to establish that plaintiff actually paid for
an ineffective prescription, 2) to identify cheaper alternative
medications and 3) to assert that plaintiff has ceased paying
for pediatric prescriptions of Celexa and Lexapro.

Plaintiff responds that it has pled injury adequately
because the FAC describes negative pediatric clinical study
results and, in the context of TPPs reimbursing for
fraudulently-promoted drugs, the issue of injury turns on
allegations that the drug was ineffective or that equally
effective cheaper alternatives were available.  Painters cite to

-17-

In re Neurontin Mktg. & Sales Practices Litig., 712 F.3d 51, 59
(1st Cir.) cert. denied sub nom. Pfizer Inc. v. Kaiser Found.
Health Plan, Inc., 134 S. Ct. 786, 187 L. Ed. 2d 594 (2013),
which affirmed the district court's holding that multiple
clinical trials demonstrating that the subject drug was no more
effective than placebo in treating off-label conditions at issue
was sufficient evidence of economic injury.  Moreover, plaintiff
alleges that it paid $24,739 in claims for pediatric use of
Celexa and/or Lexapro that would not have been incurred absent
Forest's fraudulent conduct.

    Even though the plaintiff has not identified any specific
plan members for whom Celexa or Lexapro was ineffective, viewing
all facts in favor of the plaintiff, Painters has sufficiently
pled injury and therefore has standing to raise its RICO claims.

### b.  Association-in-fact

    To successfully plead a RICO "association-in-fact"
enterprise, plaintiff must allege 1) a common purpose shared by
each member, 2) relationships among the members and 3) longevity
sufficient to permit the members to pursue the enterprise's
purpose. Boyle v. United States, 556 U.S. 938, 946 (2009).  An
"association-in-fact enterprise is simply a continuing unit that
functions with a common purpose." Id. at 948.

    The FAC alleges the existence of the Global Enterprise as
well as four sub-enterprises: Publication Sub-Enterprise,

Material Omissions Sub-Enterprise, Peer-Selling Sub-Enterprise, and Direct-to-Prescriber Sub-Enterprise. The alleged members of the enterprises include, among others, 1) Forest, its subsidiaries and employees, 2) Lundbeck, the licensor of Celexa and Lexapro, 3) several prominent academic researchers and 4) another pharmaceutical company that co-promoted Celexa.

Defendants contend that the FAC fails to allege association among enterprise members and that they could not have had a common purpose because plaintiff concedes that Forest did not distribute the Lundbeck Study "beyond a small group of its senior executives." Purported racketeers could not have shared a common purpose of concealing information of which they were ignorant. Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 121 (2d Cir. 2013) (affirming dismissal where complaint "affirmatively allege[d] [members]...were unaware of...deceptive practices"). Plaintiff disputes the assertion that the enterprises lacked a common purpose and maintains that the complaint is "brimming with allegations" that members of all enterprises conspired to remain silent and suppressed the negative results in order convey that Celexa was safe and effective for pediatric treatment.

Although plaintiff's allegation that only a small group of Forest executives knew about the Lundbeck Study is at odds with its assertion that members of all enterprises conspired to

suppress the negative results, the Court nevertheless concludes
that plaintiff has sufficiently pled that at least some of the
enterprises shared the common purpose of promoting off-label
pediatric uses of Celexa and Lexapro while concealing their true
efficacy.  Should discovery reveal that only a small number of
executives at Forest were aware of the negative studies, the
Court will necessarily revisit the issue at a later stage of
this litigation.

### c.  Predicate acts

Defendants argue that the plaintiff has failed to plead at
least two statutorily-defined predicate acts which are related
and "amount to or pose a threat of continued criminal activity"
required to bring a RICO claim. H.J. Inc. v. Nw. Bell Tel. Co.,
492 U.S. 229, 239 (1989).  They assert that the alleged
predicate acts of mail and wire fraud fail to meet the
heightened pleading standard of Fed. R. Civ. P. 9(b), including
the "who, what, where and when of the allegedly false or
fraudulent representations." Alt. Sys. Concepts, Inc. v.
Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

The Court disagrees.  Although some of the allegations of
mail and wire fraud are vague, the FAC incorporates by reference
all allegations contained in the criminal information and plea
agreement entered into by Forest with the government, including
Forest's admission that it communicated misleading information

"via letters sent by [Forest]'s Professional Affairs Department to medical practitioners." It also alleges that the predicate acts were related to increased illegal off-label sales of Celexa and Lexapro for pediatric use. Plaintiff therefore sufficiently pleads requirements with respect to RICO predicate acts to survive a motion to dismiss.

Accordingly, defendants' motion to dismiss plaintiff's RICO claims will be denied.

### 2. Minnesota consumer protection statutes

Forest contends that plaintiff's claims under the Minnesota Consumer Fraud Act ("MCFA") and the Minnesota Unfair Trade Practices Act ("MUTPA") should be dismissed because the FAC does not allege a causal nexus between the alleged injury and any deceptive conduct. At the motion to dismiss stage, however, plaintiff need only plead that the defendant "engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby." Grp. Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 12 (Minn. 2001). An allegation of a causal nexus is not required. Id. Here, plaintiff has alleged that defendant made material misrepresentations and that it paid for unnecessary prescriptions of Celexa and Lexapro for pediatric use. Painters' Minnesota state law claims (Counts III and IV) will therefore survive defendants' motion to dismiss.

Finally, defendants argue that Count V should be dismissed because injunctive relief is the sole statutory remedy under the Minnesota Deceptive Trade Practices Act ("MDTPA") and the FAC seeks only monetary damages. Minn. Stat. § 325D.44. Plaintiff does not dispute this argument. Accordingly, plaintiffs claim under MDTPA (Count V) will be dismissed.

III. **Motion to dismiss the Allied Services/NM UFCW complaint**

Defendants seek to dismiss the Allied Services/NM UFCW complaint on the grounds that 1) the claims are time-barred, 2) plaintiffs fail adequately to allege standing or other basic elements of a RICO claim and 3) the complaint fails adequately to allege injury or causation under the applicable Illinois and New Mexico state consumer protection laws. Furthermore, the defendants contend that the complaint fails to state a claim for unjust enrichment because it does not allege that Forest received a benefit at plaintiffs' expense. The arguments made by defendants are essentially the same as those they made in the Painters case.

     A.    **Statute of limitations**

          1.    **RICO claims**

Plaintiffs concede that their own March, 2009 RICO complaint cannot serve to toll the RICO claims alleged in this action. They contend, however, that their RICO claims are not time-barred because the SOL was tolled under American Pipe when

-22-

the Jaeckel, Palumbo and Wilcox actions were filed and that it remained tolled until class certification was denied in February, 2013.

For the reasons stated in the discussion of Painters' claims supra, the Court will dismiss the RICO claims as time-barred because none of the three prior actions relied upon for tolling involves a federal RICO cause of action.

## 2. Allied Services' Illinois law claims

The SOL for claims under the Illinois Consumer Fraud Act ("ICFA") is three years. 815 Ill. Comp. Stat. Ann. § 505/10a(e). The SOL for unjust enrichment claims is five years. 735 Ill. Comp. Stat. Ann. 5/13-205. A claim accrues when a plaintiff "knows or should reasonably know of his injury and also should know that it was wrongfully caused." Hermitage Corp. v. Contractors Adjustment Co., 651 N.E.2d 1132, 1139 (Ill. 1995). The limitations period thus begins to run "when the fraud was discovered or could have been discovered through due diligence." Super Pawl Jewelry & Loan, LLC v. Am. Envt. Energy, Inc., 2013 WL 1337303 at *5 (N.D. Ill. Mar. 29, 2013) (citation omitted). Plaintiff's claims are therefore untimely if it knew or should have known of its alleged injury and that it was wrongfully caused before March 13, 2011 with respect to the ICFA claim or before March 13, 2009 with respect to the unjust enrichment claim.

Plaintiff indisputably had such knowledge no later than March 23, 2009, when it joined as plaintiff in the NM UFCW complaint that was filed on March 12, 2009.  Even though Allied Services joined the complaint ten days after the key date for its unjust enrichment claim, it had constructive notice of the NM UFCW complaint. Hahn v. Cocal-Cola Co., 2004 U.S. Dist. LEXIS 14877, at *9 (N.D. Ill. July 30, 2004).  Accordingly, both state law claims (Counts III and VI as to Allied Services) will be dismissed as time-barred.

### 3.    NM UFCW's New Mexico law

A four-year SOL applies to claims under the New Mexico Unfair Practices Act ("NMUPA") and to claims for unjust enrichment.  Again, plaintiff's filing of a complaint in March, 2009, which alleged the same claims, indicates that it knew of its alleged injury.  NM UFCW's state law claims (Counts IV and VI as to NM UFCW) will therefore be dismissed time-barred.

### 4.    Consumer fraud claims in 46 additional states

Plaintiffs' complaint asserts claims under the consumer fraud statutes of 46 additional states.  Defendants note that this Court has already determined, in applying the choice-of-law rules of New York and Missouri, that class members' consumer protection claims are governed by the laws of their home states. In re Celexa & Lexapro Mktg. & Sales Practices Litig., 291

F.R.D. 13, 16-18 (D. Mass. 2013).  Forest argues that the same result follows from the application of Massachusetts' choice-of-law rules, which govern in this case because the complaint was filed in the District of Massachusetts.  Plaintiffs' individual claims therefore are governed by the laws of Illinois and New Mexico and they have no claim under the laws of the other 46 states.  The Court agrees.  Moreover, in light of the dismissal of plaintiffs' other claims, they will be unable to represent a class of plaintiffs in their state law consumer fraud claims.

Count V of the plaintiffs' complaint will therefore be dismissed.

## ORDER

For the foregoing reasons

1)    defendants' motion to dismiss Painters' amended complaint (Civil Action No. 13-cv-13113, Docket No. 18) is as to Count V, **ALLOWED**, but is otherwise **DENIED;** and

2)    defendants' motion to dismiss Allied Services/NM UFCW complaint (Civil Action No. 14-cv-10784, Docket No. 11) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 12, 2014